Leonard THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–94–00739–CR.

Court of Appeals of Texas,
San Antonio.

Jan. 10, 1996.

Kathi A. Drew, Dallas, for Appellant.

April E. Smith, Assistant District Attorney, Dallas, for Appellee.

Before LOPEZ, HARDBERGER and ONION, JJ.

## OPINION

ONION, Justice.

This appeal is taken from a conviction for delivery of a controlled substance, to-wit: cocaine in an amount less than 28 grams alleged and shown to have occurred on August 10, 1994. Appellant pleaded "not guilty," but the jury found him guilty. Thereafter, appellant entered a plea of "true" to the allegations of two prior convictions, theft from person and robbery. The jury assessed punishment at forty years' imprisonment.

Appellant advances four points of error. First, he complains of an evidentiary ruling which permitted prosecutorial questioning "beyond the scope of the offense." Second, appellant contends that the trial court erred in overruling his objection to prosecutorial argument at the penalty stage of the trial. Third and fourth, appellant argues that the punishment assessed violated his rights under the Eight Amendment to the United States Constitution and Article I, section thirteen of the Texas Constitution.

Appellant does not challenge the sufficiency of the evidence to support the conviction. A brief summary of the facts will place the points of error in proper perspective. On May 12, 1994, Dallas Police Officer Ronald Brown was working as an undercover narcotics officer. As a result of a citizen complaint that drugs were being sold at 4801 Live Oak in Dallas, Brown and two other officers went to the location. Brown's unmarked vehicle was "flagged down" by one Johnson, a "good eye" who was directing people to the apartment in question. In response to Johnson's question, Brown stated that he wanted "a dime," meaning a $10 rock of crack cocaine. Johnson led Brown to the front of the apartment complex and told him to go to apartment four. There, a female admitted Brown, who saw appellant sitting in a chair getting his hair done. When Brown asked for "a dime," appellant opened a brown or black pouch in his lap and handed Brown the rock. Brown gave appellant a marked $10 bill. The undercover officer left the apartment and notified the backup officers to make the arrest. Brown recovered the marked $10 bill from appellant at the central station where appellant was booked.

Dallas Police Officer Diane Upchurch testified that she and her partner were the patrol unit Brown alerted. When they entered the apartment, appellant was seated in a chair having his hair done. Quincy Parker, another male, was holding the small leather pouch that Brown had described to them. The officers arrested appellant, Parker, who was found in possession of cocaine, and Johnson, who was located outside.

Appellant's defense was that it was Parker who sold the cocaine to Brown. He denied the sale or the possession of the pouch. He claimed that he was only at the apartment to have his hair done. He admitted that he had been previously convicted of theft, robbery, and aggravated robbery. In rebuttal Officer Brown testified that Parker did not deliver any cocaine to him.

In point of error one, appellant contends that the "trial court erred by overruling appellant's objection to a line of questioning which went beyond the scope of the offense charged and portrayed appellant as a drug dealer in violation of the general policy which forbids trying a defendant for being a criminal generally."

Officer Brown was the State's principal witness. The prosecutor established Brown's background, education, experience and training. Brown described in some detail how the Dallas Police Narcotics Division was separated into different departments, his assignment to the Street Level Department, and the work of an undercover narcotics officer. When the prosecutor asked how crack houses operated, appellant's trial counsel objected and asked that the testimony be restricted to

what happened on the day in question. The objection was sustained.

Apparently believing there had been an attack upon Brown's qualifications to testify about the operation of crack houses, the prosecutor elicited from Brown the large number of crack cocaine purchases that he had made as an undercover officer, that he had been in many crack houses, had observed their operation, and had been given police training in this respect. Based on his personal knowledge, Brown's opinion was that crack houses are usually run by two individuals, one a "good eye" to direct traffic and the other, a seller of the drugs. It was also his opinion that crack houses employ runners. Only when the prosecutor asked "why" runners were employed, did the defense object to this line of questioning. The objection as to "runners" was sustained.

At this point the complained-of testimony was elicited from Brown.

Q. Sir, let me just ask you this: Is it common, and based on your experience that people keep—the drug dealers keep a large amount of crack cocaine at a crack house?

A. No.

Q. Why not?

A. Just for the purposes of being robbed, Mr. Birdwell (defense counsel): I'm going to renew my objection in that he keeps rambling on, and the questions are about in general. And we're going to object to any questions that are not specifically related to the incident on May the 12th, 1994, and what he did on that particular day and that pertains to this defendant here. We object to any further questions.

The objection was overruled. The prosecutor then established without objection, that in Officer Brown's opinion crack houses did not keep large amounts of drugs for fear of being robbed, but as to money, "[I]t depends." The direct examination then returned to the events of May 12, 1994.

■ Appellant's point of error is directed to the overruling of his stated objection. First, appellant's objection was not timely. TEX.R.APP.P. 52(a). Appellant waited until

both questions were asked and answered before objecting. An accused must raise an objection at the earliest opportunity—as soon as the basis for objecting becomes apparent. *Johnson v. State*, 803 S.W.2d 272, 291 (Tex. Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991). Moreover, a specific objection must be made each time an offer of inadmissible evidence is made in order to preserve error for review. *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim.App.1984); *Miranda v. State*, 813 S.W.2d 724, 739 (Tex.App.—San Antonio 1991, pet. ref'd). In addition, the improper admission of evidence is not reversible error when the same facts are proven by other unobjected-to testimony. *Miranda*, 813 S.W.2d at 739. Much of the complained-of testimony came in without objection.

■ We also observe that a trial objection must comport with the complaint on appeal. *Fuller v. State*, 827 S.W.2d 919, 929 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1995). A trial objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State*, 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Appellant's trial objection was to the generality of the question and that the prosecutor had not narrowed his interrogation to the events of the day in question. His complaint on appeal is a claimed violation of Rules 404(b) and 403 of the Texas Rules of Criminal Evidence. No such objection was made at trial. Nothing is presented for review. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991); *Adams v. State*, 862 S.W.2d 139, 147 (Tex.App.—San Antonio 1993, pet. ref'd).

■ Questions of relevance should be left largely to the trial court relying on its observations and experience, and a conviction will not be reversed absent an abuse of discretion. In arguing Rules 403 and 404(b), appellant is conceding relevancy. A witness may qualify to give testimony both under Rule 701 (opinion testimony by lay witnesses) and Rule 702 (expert testimony) of the Texas Rules of Criminal Evidence. *Austin v. State*,

794 S.W.2d 408, 410 (Tex.App.—Austin 1990, pet. ref'd) (holding that a police officer's testimony, based on training and experience, that a "Swedish deep muscle rub" in a massage parlor was often key words for prostitution was admissible as opinion testimony both as an expert and a lay witness). Here Officer Brown was qualified under both rules to give his opinion. Moreover, an opinion is not inadmissible because it embraces an ultimate issue. TEX.R.CRIM.EVID. 704; *Reece v. State,* 878 S.W.2d 320, 324-25, 327 (Tex. App.—Houston [1st Dist.] 1994, no pet.).

In *Williams v. State,* 826 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd), it was held that a police officer who had witnessed hundreds of narcotics transactions was held qualified to explain a defendant's actions as being a part of drug transaction; *see also Reece,* 878 S.W.2d at 324-25; *Williams v. State,* 760 S.W.2d 292, 294 (Tex. App.—Texarkana 1988, pet. ref'd); *Thibeadeau v. State,* 739 S.W.2d 482, 485 (Tex.App.— Beaumont 1987), vacated on other grounds, 761 S.W.2d 22 (Tex.Crim.App.1988) (holding that when a police officer with years of experience could help explain the use and effects of cocaine in terms that the jury could understand, his testimony regarding such matters was appropriate). If appellant's contention was properly preserved for review, it would be without merit. Point of error one is overruled.

■ In point of error two, appellant urges that the "trial court erred by overruling appellant's objection to prosecutorial argument" at the penalty stage of the trial.

The State waived its opening argument. Appellant's counsel briefly asked the jury to assess the minimum punishment of twenty-five years so that appellant could have something to live for and look forward to, and that his family could look forward to having him home and out of prison. The prosecutor called the jury's attention to appellant's prior criminal convictions and then argued:

> Just think about this: If you're going to have mercy on someone. The defense asks you to have mercy on Leonard Thomas; before you do that, think about those people out there who Leonard Thomas has sold drugs to. Think about the people—.

> Mr. Birdwell: Your Honor, we object to that. There's no evidence at all that he sold drugs to anyone out there except the individuals who testified in this court, the undercover officer and we object to the argument of counsel, and instruct the jury to disregard that.

> The Court: I'll overrule the objection, provided the DA re—

> Mr. Lacy (prosecutor): I'll rephrase it.

> Mr. Lacy: As I told you, we're entitled to make a plea for law enforcement. You know and I know what drugs do to our society. Drug dealers prey on the weakness of others. They take advantage of others. People that are hooked on drugs. Before you have mercy on this defendant, think about those people that drug dealers prey on—

There was no objection to the rephrased argument which concluded the prosecutor's jury argument.

Proper jury argument normally falls into one of four categories: 1) summation of the evidence, 2) reasonable deduction from the evidence, 3) answer to argument by opposing counsel, and 4) plea for law enforcement. *See Harris v. State,* 784 S.W.2d 5, 12 (Tex. Crim.App.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990); *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim. App.1988); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex.Crim.App.1973). The State argues that in responding to the defense argument that twenty-five years' imprisonment was the proper punishment, the prosecutor's argument was a reasonable deduction from the evidence and a plea for law enforcement. After the complained-of argument, the prosecutor rephrased his argument at the trial court's suggestion to which no further objection was addressed. For reversible error to occur during jury argument, the argument when considered in light of the record as a whole must be extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused into the trial proceedings. *Borjan v. State,* 787 S.W.2d 53, 56 (Tex.Crim.App.1990); *Landry v. State,* 706 S.W.2d 105, 110 (Tex.Crim.App. 1985), *cert. denied,* 479 U.S. 871, 107 S.Ct.

242, 93 L.Ed.2d 167 (1986). It is improper for a prosecutor in jury argument to go outside the record to inject extraneous offenses or facts prejudicial to the defendant. *Borjan,* 787 S.W.2d at 56–57. In light of the rephrased argument, no reversible error is presented.

If it could be argued that there was error, it was error only as to punishment. We conclude from the record as a whole that the error, if any, was harmless beyond a reasonable doubt. TEX.R.APP.P. 81(b)(2). There is no reasonable possibility that the complained-of argument might have contributed to the punishment assessed as a habitual criminal. *See Orona v. State,* 791 S.W.2d 125, 128 (Tex.Crim.App.1990); *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). Point of error two is overruled.

In the third point of error, appellant urges that the punishment assessed violates his rights under the Eight Amendment to the United States Constitution because it is cruel and unusual being "grossly disproportionate to the crime."

■ The Eighth Amendment which is applicable to the States by virtue of the Fourteenth Amendment, *see Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), has been recognized as encompassing a narrow proportionality principal. In *Weems v. United States,* 217 U.S. 349, 371, 30 S.Ct. 544, 550, 54 L.Ed. 793 (1910), the Eighth Amendment was interpreted as prohibiting "greatly disproportioned" sentences quoting *O'Neil v. Vermont,* 144 U.S. 323, 340, 12 S.Ct. 693, 699, 36 L.Ed. 450 (1892) (Field, J. dissenting). The most extensive application of the proportionality principle has been in death penalty cases, *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), but it has also been applied to non-capital cases. *Rummel v. Estelle,* 445 U.S. 263, 271–274, 100 S.Ct. 1133, 1137–39, 63 L.Ed.2d 382 (1980); *see also Hutto v. Davis,* 454 U.S. 370, 374, 102 S.Ct. 703, 705, 70 L.Ed.2d 556 (1982). Thus, a state criminal sentence must be proportionate to the crime

for which the defendant has been convicted. The United States Supreme Court has stated that "although a sentence may be within the range permitted by statute, it may nonetheless run afoul of the Eighth Amendment prohibition against cruel and unusual punishment." *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). While recognizing that reviewing courts should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes and to the discretion that trial courts [1] possess in imposing sentences, the Supreme Court wrote that "no penalty is *per se* constitutional." *Id.* at 291, 103 S.Ct. at 3010. The Court further stated:

A court's proportionality analysis ... should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the commission of the same crime in other jurisdictions.

*Id.* at 292, 103 S.Ct. at 3011.

In *Solem,* the Supreme Court invalidated a state statute that prescribed life imprisonment without the possibility of parole when applied to a recidivist with a series of nonviolent prior offenses.

In 1991, the Supreme Court reexamined its analysis in *Solem.* *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) upheld a life sentence without the possibility of parole for possession of 672 grams of cocaine against an Eighth Amendment challenge. *Harmelin* left the law, as appellant concedes, in a confusing state. Justice Scalia, joined by the Chief Justice, wrote, "*Solem* was simply wrong; the Eighth Amendment contains no proportionality guarantee." *Harmelin,* 501 U.S. at 965, 111 S.Ct. at 2686. Justice Kennedy, joined by Justices O'Conner and Souter found that the Eighth Amendment encompasses a narrow proportionality principle that applies to non-capital sentences and clarified *Solem's* three-factor analysis. *Id.* at 995–1010, 111 S.Ct. at

---

**1.** This statement undoubtedly is applicable to states where in certain cases the jury has the discretion to assess punishment within the range established by the legislature.

2701–10. Justices White and Marshall, writing separately, concluded that the Eighth Amendment does include a "proportionality principle." Justices Stevens and Blackmun found the sentence "capricious" which violated the cruel and unusual provision of the Eighth Amendment and by inference, any "proportionality" requirement.

*Harmelin* left much uncertainty in its wake. One court found that *Harmelin* provided no guidance in articulating the proper approach for an Eighth Amendment review, observing that the *Harmelin* court could not reach a consensus on whether a proportionality review should exist, or the appropriate standard to apply when reviewing a sentence for proportionality. *United States v. Angulo-Lopez*, 7 F.3d 1506, 1510 (10th Cir.1993). Without determining whether *Harmelin* overruled *Solem,* the court addressed the proportionality concerns under *Solem,* noting that the defendant had not raised the second and third criteria under *Solem.* Applying the first criteria, the court concluded that Angulo–Lopez's life sentence for masterminding a conspiracy involving 47.82 kilograms of crack cocaine was not violative of the Eight Amendment in view that a life sentence in *Harmelin* for possessing 672 grams of cocaine was not violative of the Eighth Amendment. *Id.; see also United States v. Robertson*, 45 F.3d 1423, 1447 (10th Cir.1995). In Texas, at least two courts have passed on proportionality contentions under *Solem* simply ignoring or overlooking *Harmelin. See Cantu v. State*, 866 S.W.2d 647 (Tex.App.—Houston [14th Dist.] 1993, no pet.); *Smallwood v. State*, 827 S.W.2d 34, 37–38 (Tex.App.—Houston [1st Dist.] pet. ref'd). We thus look for guidance from other cases.

■ Interpreting *Harmelin,* the Fifth Circuit Court of Appeals has written:

By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem,* and five justices rejected it. Thus, this much is clear: disporportionality survives; *Solem* does not. Only Justice Kennedy's opinion reflects

that view. It is to his opinion, therefore, that we turn for direction. Accordingly, we will initially make a threshold comparison of the gravity of McGruder's offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then consider the remaining factors of the *Solem* test and compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

*McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.), *cert. denied,* 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992); *see Harmelin,* 501 U.S. at 1004–06, 111 S.Ct. at 2706–2708 (gross disproportionality) (Kennedy, J., plurality op.). We agree with the Fifth Circuit that disproportionality survives after *Harmelin,* and we will review a sentence to determine whether it is grossly disproportionate to the crime. *Harmelin,* 501 U.S. at 1004–06, 111 S.Ct. at 2706–2708 (Kennedy, J., plurality op.); *see also Lackey v. State,* 881 S.W.2d 418, 421 (Tex.App.—Dallas 1994, pet. ref'd). As will be discussed below, we hold that appellant's sentence is not grossly disproportionate to his crime; accordingly, we do not decide what role, if any, the remaining factors play in his disproportionality points of error.

■ Appellant's conduct in delivering cocaine less than 28 grams was a first degree felony at the time of its commission. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678 § 1, 1989 Tex.Gen.Laws 2230, 2935–36 (former § 481.112(b), Tex.Health & Safety Code). It alone carried a penalty of not more than 99 years' imprisonment or less than 5 years, and a possible fine not to exceed $20,000. Tex. Health & Safety Code § 481.106 (Vernon 1996). Delivery of cocaine, a controlled substance, known for its addictive powers, is a serious offense. It is common knowledge that possession, use, and distribution of illegal drugs represents one of the greatest problems affecting the health and welfare of our population. Studies clearly demonstrate the direct nexus between illegal drugs and crimes of violence. The record shows that appellant did not merely possess cocaine but delivered cocaine.

Appellant's sentence—in addition to being based upon his having committed a first degree felony—involved the application of the habitual criminal provisions of the penal code. TEX.PENAL CODE ANN. § 12.42(d) (Vernon 1994). This statutory provision provides for punishment of life imprisonment or a term of years not more than 99 years or less than 25 years when the defendant has been previously convicted of two felony offenses under certain conditions. It was alleged and proved that appellant had been previously convicted of theft from person and robbery. He admitted three prior felony convictions in his testimony. What was written in *Lackey*, 881 S.W.2d at 421 is here applicable. The Dallas Court of Appeals speaking through Justice Lagarde stated:

> Under a recidivist statute, a sentence is "based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes." *Rummel v. Estelle*, 445 U.S. 263, 284, 100 S.Ct. 1133, 1144, 63 L.Ed.2d 382 (1980); *McGruder*, 954 F.2d at 316. A state with a recidivist statute is not required to treat a defendant as if an offense was his first but is entitled to place upon the defendant "the onus of one who is simply unable to bring his conduct within the social norms prescribed by the criminal law of the State." *Rummel*, 445 U.S. at 284, 100 S.Ct. at 1144. "[The] primary goals [of a recidivist statute] are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time." *Rummel*, 445 U.S. at 284, 100 S.Ct. at 1144–45. "[The point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." *Rummel*, 445 U.S. at 285, 100 S.Ct. at 1145.

Here, the jury assessed the punishment at 40 years which is less than one-half of the maximum sentence possible under the range established by the legislature. Much deference must be accorded the legislature's authority and the discretion vested in the jury in assessing punishment. *Solem* is distinguishable from the instant case. Here, there is the possibility of parole. In *Solem* there was none. Appellant's criminal record demonstrates a pronounced inability to bring his conduct within the special norms prescribed by the criminal laws of this State. Segregating a repeat offender from the society he victimizes is a permissible goal of a recidivist statute. *Rummel*, 445 U.S. at 284, 100 S.Ct. at 1144–45. Appellant's prior convictions have not deterred him from committing another offense. We hold that his sentence is not grossly disproportionate to his crime and his punishment is not cruel and unusual under the Eighth Amendment. *Lackey*, 881 S.W.2d at 422. The third point of error is overruled.

In the fourth and last point of error, appellant reurges his contention advanced in the third point of error, but this time he claims a violation of Article I, section 13 of the Texas Constitution. Appellant concedes that it has long been held that if the punishment assessed is within the range of penalties established by the legislature there is no violation of the state constitutional provisions against cruel and unusual punishment. *See Albro v. State*, 502 S.W.2d 715, 716–17 (Tex.Crim.App. 1973); *Samuel v. State*, 477 S.W.2d 611, 614 (Tex.Crim.App.1972); *Francis v. State*, 877 S.W.2d 441, 444 (Tex.App.—Austin 1994, pet. ref'd); *Johnson v. State*, 864 S.W.2d 708, 725 (Tex.App.—Dallas 1993), *aff'd*, 912 S.W.2d 227 (Tex.Crim.App.1995).

Appellant has briefed this point with the third point of error citing authorities interpreting the Eighth Amendment. He has not by argument or authority established that the cruel and unusual provisions of the state constitution are broader and offer greater protection than the Eighth Amendment. Nothing is presented for review. *See Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim. App.1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 154, 126 L.Ed.2d 115 (1933); *Muniz v. State*, 851 S.W.2d 238, 251 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Robinson v. State*, 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991);

see also State v. Toone, 872 S.W.2d 750, 751 n. 4 (Tex.Crim.App.1994).

In *Francis,* the defendant contended that Article I, section 13 of the Texas Constitution contained a guarantee against disproportionate sentences and was broader than the Eighth Amendment. The Court, assuming without deciding, that a proportionality review is required by the state constitution, held that the defendant failed to demonstrate that the punishment assessed in his case was disproportionate to the offense. *Id.* at 444. The same is true here as to appellant's punishment as a habitual criminal. Point of error four is overruled.

The judgment is affirmed.