**Terrell Dewayne DIAMOND a/k/a Terrell Dawayne Diamond, Appellant**

v.

**The STATE of Texas, Appellee.**

**Nos. 09–11–00478–CR, 09–11–00479–CR.**

Court of Appeals of Texas, Beaumont.

Submitted April 3, 2012.

Decided April 25, 2012.

Douglas M. Barlow, Beaumont, for Appellant.

Tom Maness, Criminal Dist. Atty., Rodney D. Conerly, Asst. Dist. Atty., Beaumont, for the State.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

CHARLES KREGER, Justice.

Terrell Dewayne Diamond[1] appeals from the trial court's revocation of his deferred adjudication community supervision and imposition of sentence in two cases. Because Diamond was under the age of seventeen years, the cases were initially referred to the juvenile court. That court waived its jurisdiction and transferred the matters to the district court for trial as an adult.

In accordance with a plea-bargain agreement, Diamond entered a plea of guilty to the offense of the unauthorized use of a motor vehicle. *See* Tex. Penal Code Ann. § 31.07 (West 2011). The trial court found the evidence sufficient to find Diamond guilty, deferred further proceedings, and placed Diamond on community supervision for five years. In the second case, Diamond entered a plea of guilty to the offense of aggravated robbery. *See* Tex. Penal Code Ann. § 29.03 (West 2011). The trial court found evidence sufficient to find Diamond guilty, deferred further proceedings, placed Diamond on community supervision for ten years, and assessed a $1,000 fine. The State subsequently filed motions to revoke Diamond's unadjudicated community supervision in both cases. At the hearing on the motion to revoke, Diamond pled "true" to four violations of the conditions of his community supervision. The trial court found that Diamond violated the terms of his community supervision, found him guilty of aggravated robbery, and assessed his punishment at 99 years' confinement. The trial court further found Diamond guilty of the unauthorized use of a motor vehicle, and assessed his punishment at 2 years' confinement, to run consecutive to his sentence for the aggravated robbery charge.

Diamond filed a motion to reconsider the imposition of his state jail sentence. In both cases Diamond also filed a motion for new trial and motion in arrest of judgment wherein Diamond argued that the verdict is contrary to the law and the evidence, and that his sentence is inappropriate and unreasonable. As there is not a signed order in the record denying Diamond's motions for new trial, we deem they were denied by operation of law. *See* Tex. R.App. P. 21.8. Diamond appealed both cases.

In his appeal in cause numbers 7889 and 7890, Diamond argues that he has been denied a complete record. In his appeal in cause number 7890, Diamond raises three additional issues. He argues that the record fails to establish that the trial court had proper jurisdiction, that the trial court erred in failing to grant his motion for new trial, and that his sentence for aggravated robbery constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article 1.09 of the Texas Code of Criminal Procedure.

## INCOMPLETE RECORD

For both cause numbers 7889 and 7890, Diamond contends he was denied a complete record on appeal despite his compliance with the rules to secure a complete record. *See* Tex.R.App. P. 34.6(b) (reporter's record request); Tex.R.App. P. 35.3(b) (reporter's record filing).

In both cases, Diamond timely filed a written designation of the record. The designations request a "[c]omplete transcription of court reporter's notes of all proceedings in this cause as requested in the attached written request pursuant to Rule 34.6." However, the designations in the appellate record do not include the written request referenced in the designation.

---

1. Terrell Dewayne Diamond is also known as Terrell Dawayne Diamond.

The reporter's record in both cases contains only the record from the revocation hearing and sentencing. The record of the transfer proceeding, the original plea hearing, and the hearing placing Diamond on deferred adjudication are not part of the appellate record. Diamond asserts that without the records from these hearings, he is unable to determine if the trial court committed reversible error in the transfer proceedings, or if the trial court pre-determined the sentence at the time of the entry of the original plea, or if the trial court made other comments that would render the ultimate sentence insupportable.

■■■ A defendant placed on deferred adjudication community supervision may raise issues relating to the original plea proceeding only in an appeal timely filed after the imposition of the deferred adjudication community supervision. *Manuel v. State,* 994 S.W.2d 658, 661–62 (Tex.Crim. App.1999). An appellate court's review of an order adjudicating guilt is generally limited to whether the trial court abused its discretion in determining that the defendant violated the terms of his community supervision. *See Staten v. State,* 328 S.W.3d 901, 904–05 (Tex.App.-Beaumont 2010, no pet.); Tex.Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp.2011). A court of appeals lacks jurisdiction over an appeal of an earlier order of deferred adjudication community supervision unless the trial court gives permission to appeal. *See* Tex.Code Crim. Proc. Ann. art. 44.02 (West 2006); *Chavez v. State,* 183 S.W.3d 675, 680 (Tex.Crim.App.2006).

■■ Diamond did not timely appeal the trial court's order placing him on deferred adjudication community supervision. *See* Tex.R.App. P. 33.1. As the potential issues Diamond is concerned with raising are related solely to his original plea proceeding, the reporter's record from the original plea proceedings is unnecessary to the resolution of this appeal. Those issues were required to be appealed, if at all, within the allowable time period immediately after the trial court imposed community supervision. *See Manuel,* 994 S.W.2d at 661–62. Diamond did not obtain the trial court's permission for an appeal from the plea proceeding, but rather waived his right to an appeal. We overrule this issue.

## JURISDICTION

■■ In cause number 7890, Diamond further argues that because he was 15 years old on the date of the alleged offense, the trial court lacked jurisdiction to hear his cause absent proper transfer proceedings from a juvenile court. Diamond contends that while cause number 7889 contains a waiver of jurisdiction and order of transfer from the juvenile court, the district court never acquired jurisdiction over cause number 7890 because the order from the juvenile court waiving jurisdiction and transferring the case was not filed with the district court in cause number 7890. On appeal, Diamond does not contest the propriety of the juvenile court's waiver of jurisdiction and transfer to criminal district court, the fact that the juvenile court signed and entered the transfer order, or the accuracy of the copy of the transfer order contained in the record in cause number 7889. Rather, he contends that the absence of the order in the trial court's file in cause number 7890 deprives the trial court of jurisdiction.

Because of Diamond's age at the time of the offenses, these cases were initially referred to the juvenile court. However, in certain circumstances, under section 54.02(a) of the Family Code, a juvenile court is given authority to waive its exclusive jurisdiction and transfer a person to the appropriate criminal district court for criminal proceedings. Tex. Fam.Code

Ann. § 54.02(a) (West Supp.2011). Subsection (h) of the Code provides:

> If the juvenile court waives jurisdiction, it shall state specifically in the order its reasons for waiver and certify its action, including the written order and findings of the court, and shall transfer the person to the appropriate court for criminal proceedings and cause the results of the diagnostic study of the person ordered under Subsection (d), including psychological information, to be transferred to the appropriate criminal prosecutor. On transfer of the person for criminal proceedings, the person shall be dealt with as an adult and in accordance with the Code of Criminal Procedure ... [.] A transfer of custody made under this subsection is an arrest.

*Id.* § 54.02(h) (Although the Legislature amended this section after the offense at issue, we cite to the current version of the statute because subsequent amendments do not affect the outcome of this appeal.).

The waiver of jurisdiction and order of transfer filed in the clerk's record in cause number 7889 refers to the complaints indicted in both cause numbers 7889 and 7890, i.e., that Diamond, while in the course of committing theft of property, with the intent to obtain and maintain control of the property, caused serious bodily injury to the complainant by hitting the complainant with a rock and with his hands, and that Diamond operated an automobile owned by another without effective consent. The transferring court ordered, "the Clerk of said Court transmit forthwith to the proper Criminal Court of Jefferson County, Texas, this written Order and findings of the said [317th District Court] of Jefferson County, Texas, and said complaints attached hereto." Hand-written on the top of the first page of the waiver and transfer order were both cause numbers 7889 and 7890. Further, the trial court indicted both cases on the same date. The trial court heard the original plea hearings for both cause numbers on the same date. The trial court deferred the proceedings in both cases on the same date. Finally, the trial court held the revocation proceedings in both cases on the same date. The same attorney represented Diamond in both cases. The same criminal district judge presided over both cases.

■ The transfer order directed the clerk to transmit to the criminal court the complaints attached thereto. The clerk's record for cause number 7889 contains the transfer order, but the order is not in the record for cause number 7890. Neither the transfer order, nor section 54.02(h) of the Family Code requires that the transfer order actually be "filed" under the cause number of the case in the court in which the adult proceedings ultimately occur. We hold that the juvenile court issued the proper order, the order was communicated to the trial judge of the criminal district court proceedings, and the trial judge properly accepted jurisdiction over these cases. We overrule this issue.

### EXCESSIVE SENTENCE

In Diamond's third and fourth issue in cause number 7890, he contends that the trial court should have granted his motion for a new trial because his sentence is disproportionate and constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and article 1.09 of the Texas Code of Criminal Procedure[2]. The State

---

2. Diamond has briefed his article 1.09 claim with his issue regarding the Eighth Amendment. He has not by argument or authority established that the cruel and unusual provisions of the state statute are broader and offer greater protection than the Eighth Amend-

argues that Diamond did not object and therefore waived any claim of disproportionate sentence on appeal.

■■■ To preserve error for appellate review, the complaining party must present a timely and specific objection to the trial court, and obtain a ruling. Tex. R.App. P. 33.1(a). A party's failure to specifically object to an alleged disproportionate or cruel and unusual sentence in the trial court or in a post-trial motion waives any error for the purposes of appellate review. *Rhoades v. State*, 934 S.W.2d 113, 120 (Tex.Crim.App.1996); *Noland v. State*, 264 S.W.3d 144, 151 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd). While Diamond did not raise any objections when the trial court sentenced him, he did subsequently file post-sentence motions complaining about the alleged excessive sentence. We find that Diamond preserved this issue for review.

■■■ Generally, a sentence that is within the range of punishment established by the Legislature will not be disturbed on appeal. *See Jackson v. State*, 680 S.W.2d 809, 814 (Tex.Crim.App.1984). The appellate court rarely considers a punishment within the statutory range for the offense excessive, unconstitutionally cruel, or unusual under either Texas law or the United States Constitution. *See Kirk v. State*, 949 S.W.2d 769, 772 (Tex.App.-Dallas 1997, pet. ref'd); *see also Jackson v. State*, 989 S.W.2d 842, 846 (Tex.App.-Texarkana 1999, no pet.). Aggravated robbery is a first-degree felony, which carries a punishment range of confinement from five to ninety-nine years. Tex. Penal Code Ann. §§ 12.32, 29.03(b) (West 2011). Diamond's sentence of ninety-nine years is within the statutory range authorized by the Legisla-

ture for the crime of aggravated robbery. *See id.*

Diamond failed to prove that his sentence was grossly disproportionate to the offense he committed. Further, there is no evidence in the record of sentences imposed for similar offenses by which we can make a reliable comparison. *See Jackson*, 989 S.W.2d at 846. Diamond cites to a number of cases wherein the appellate courts have found lengthy sentences constitutional. *See Thomas v. State*, 916 S.W.2d 578, 584 (Tex.App.-San Antonio 1996, no pet.) (40–year conviction constitutional noting appellant had two prior felonies, including theft from a person and robbery); *Phillips v. State*, 887 S.W.2d 267, 268–69 (Tex.App.-Beaumont 1994, pet. ref'd) (99 years for aggravated sexual assault after adjudication based on failure to attend offenders program and failure to wear electronic monitoring device); *Lackey v. State*, 881 S.W.2d 418, 420–21 (Tex.App.-Dallas 1994, pet. ref'd) (35–year sentence for enhanced shoplifting constitutional when punishment enhanced by prior felony convictions for burglary and robbery); *Nevarez v. State*, 832 S.W.2d 82, 86–87 (Tex.App.-Waco 1992, pet. ref'd) (life sentence constitutional when punishment enhanced by two prior felony convictions); *Smallwood v. State*, 827 S.W.2d 34, 37–38 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd) (50–year sentence found constitutional when appellant's punishment was enhanced pursuant to the habitual offenders statute and when appellant had other theft offenses and felony convictions); *Simpson v. State*, 668 S.W.2d 915, 919–20 (Tex.App.-Houston [1st Dist.] 1984, no pet.) (life sentence constitutional when appellant convicted for possession of cocaine had two prior felony convictions).

ment. Therefore, nothing is presented for review. *See Johnson v. State*, 853 S.W.2d

527, 533 (Tex.Crim.App.1992).

Diamond argues each of these cases had aggravating factors not present in his case. We disagree. During his sentencing hearing, the trial court questioned Diamond about the circumstances surrounding the aggravated robbery offense for which he had previously pleaded guilty. Diamond stated that while he was robbing a man, he hit him with a rock and knocked the man unconscious. He admitted that after knocking the man unconscious, he left the man to die while his "co-partner" continued beating the unconscious man. Diamond indicated to the court that his drug addiction was the source of his problems. Further, contrary to Diamond's argument, his community supervision violations were not purely administrative. His violations included his testing positive for marijuana use twice and breaking curfew by being at a residence other than his own at 2:17 a.m. The same drug problems Diamond had when he nearly killed a man, he continued to struggle with while on community supervision. The record indicates that the trial court also considered Diamond's juvenile offenses, which were substantial, including among others, second-degree robbery, theft, unauthorized use of a motor vehicle, and aggravated robbery. The trial court was lenient in granting Diamond community supervision in the first instance. The trial court apparently sought to instill in Diamond the seriousness of his situation by imposing a 180–day up-front time period in jail. Diamond was placed on community supervision to participate in programs to reform his behavior. However, his testimony established that he did not fulfill his community supervision requirements. Prior to sentencing, the trial court not only had the statements made by Diamond and his pleas of true as to the violations of his community supervision, but also had his original plea of guilty to the indictment of aggravated robbery. The trial court was very explicit regarding the reasons for the sentence imposed, wherein the court stated:

> And the only reason that somebody's not dead yet is because we just haven't given you enough time out on the street to make that happen. But I believe in my heart that if you're given an opportunity to get back out on the street you're going to kill the next one.

Based on the record before us, we are unable to conclude that Diamond's sentence constitutes a cruel and unusual punishment. We overrule Diamond's constitutional challenges to the length of the sentence assessed by the trial court in cause number 7890.

Having overruled Diamond's issues in cause numbers 7889 and 7890, we affirm the trial court's judgment in both cases.

AFFIRMED.

DAVID GAULTNEY, Justice, dissenting.

In the appeal of the judgment in cause number 09–7890, appellant's counsel argues that a ninety-nine year sentence for a seventeen-year-old, who committed the offense when he was fifteen, is cruel and unusual punishment. Counsel states that the United States Supreme Court recently held it unconstitutional "to sentence a juvenile in a non-homicide case to a sentence that could not be discharged in his lifetime." In *Graham v. Florida*, the Supreme Court reasoned:

> *Roper* established that because juveniles have lessened culpability they are less deserving of the most severe punishments. [*Roper v. Simmons*, 543 U.S. 551, 569,] 125 S.Ct. 1183, 161 L.Ed.2d 1. As compared to adults, juveniles have a " 'lack of maturity and an underdeveloped sense of responsibility' "; they "are more vulnerable or susceptible to negative influences and outside pressures,

including peer pressure"; and their characters are "not as well formed." *Id.*, at 569–570, 125 S.Ct. 1183, 161 L.Ed.2d 1. These salient characteristics mean that "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Id.*, at 573, 125 S.Ct. 1183, 161 L.Ed.2d 1. Accordingly, "juvenile offenders cannot with reliability be classified among the worst offenders." *Id.*, at 569, 125 S.Ct. 1183, 161 L.Ed.2d 1. A juvenile is not absolved of responsibility for his actions, but his transgression "is not as morally reprehensible as that of an adult." *Thompson* [*v. Oklahoma*], *supra*, [487 U.S. 815] at 835, 108 S.Ct. 2687, 101 L.Ed.2d 702 [ (1988) ] (plurality opinion).

560 U.S. 48, 68, 130 S.Ct. 2011, 2026, 176 L.Ed.2d 825 (2010). The State responds that "the probability of parole makes these circumstances different from *Graham*." The Supreme Court also noted in *Graham* that "[t]hose who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives." *Id.* at 2030. Although the State argues that the facts justify the sentence, the State acknowledges it "cannot disagree that holding a human being to what amounts to life in prison for horrendously bad decisions made at age fifteen is an ethically and morally monumental burden, not to be undertaken without serious consideration."

The law provides that, after an adjudication of guilt, "all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred." Tex.Code Crim. Proc. Ann. art. 42.12, § 5(b) (West Supp.2011); *see Pearson v. State*, 994 S.W.2d 176, 178 (Tex. Crim.App.1999); *Issa v. State*, 826 S.W.2d 159, 161 (Tex.Crim.App.1992). In this case, sentencing occurred immediately after revocation, as follows:

Cause No. 7890, I find the evidence to be sufficient to find Counts 2, 3, 4, and 6 to be true. They are true. I hereby revoke your unadjudicated probation. I now find you guilty of the offense of aggravated robbery. I assess your punishment at 99 years' confinement in the Institutional Division. You'll get credit for whatever time that you're entitled to by law.

Defense counsel filed a motion for new trial noting that the sentence was "unreasonable and without consideration of existing verifiable facts[.]" Defense counsel also filed a motion for reconsideration of the imposition of sentence, asked for a hearing and opportunity to present evidence, and requested that defendant be placed on community supervision. Appellant argues that "[b]ased upon the age of the defendant and matters set out in the motion for new trial and motion for reconsideration of imposition of sentence, and the manifest injustice of the harsh sentence, the decision of the trial court was contrary to the law and evidence, and therefore the trial court should have granted the motion for new trial."

This Court does not have any reporter's record on appeal other than of the last hearing, and appellant complains of the incomplete record. Appellant argues that denying him the entire record prevents him from reviewing whether the sentence was impermissibly predetermined when the plea was entered. *See Steadman v. State*, 31 S.W.3d 738, 741 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) ("It is a denial of due process for the court to

arbitrarily refuse to consider the entire range of punishment for an offense or refuse to consider the evidence and impose a predetermined punishment."); *Jefferson v. State*, 803 S.W.2d 470, 471 (Tex.App.-Dallas 1991, pet. ref'd). The State responds that "[w]hile counsel's inability to ascertain whether the trial court took some action or made a remark that would provide a challenge could be remedied by providing the requested records, the trial court has opted not to do so." This Court should order the filing of the complete record and allow the parties to provide supplemental briefs after a review of the record.

At the plea hearing, the trial judge apparently thought the appropriate resolution at that time was community supervision, because the judge deferred adjudication and placed appellant on community supervision. Appellant subsequently obtained his high school diploma after he completed the up-front time. At the revocation hearing, the probation officer and defense counsel mentioned the SAFPF program. Defense counsel stated "We would ask the Court, Your Honor, to send Mr. Diamond to SAFPF and all of the aftercare programs that are available, and give him an opportunity, Your Honor, to kick his dependence upon marijuana." The probation officer said "[w]e've tried to get him into different programs for him for anger management—I think he attended that once—and J.C.D.I. I[t] took me about three appointments to get him into that. Only thing I would recommend, if he is continued on probation, is to keep him locked up for SAFPF."

The Supreme Court has noted that "[f]ew, perhaps no, judicial responsibilities are more difficult than sentencing." *See Graham*, 130 S.Ct. at 2031. In rejecting a sentence of life without parole for juvenile nonhomicide offenders, the Court questioned whether "a case-by-case proportionality approach could with sufficient accuracy distinguish the few incorrigible juvenile offenders from the many that have the capacity for change." *Id.* at 2032. Ninety-nine years is not a sentence of life without parole, but similar sentencing difficulties and considerations are present in this case. Appellant should be granted a complete record for review, and if then shown to be necessary, another hearing before the trial court at which the State and the defense can present evidence concerning an appropriate disposition.