# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00877-CR

**Hugo Alquicira, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 10-922-K277, HONORABLE C. W. DUNCAN, JR., JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In four issues, Hugo Alquicira appeals his conviction for aggravated assault with a deadly weapon. The victim in this case was his wife, Maria Puente. After the jury found Alquicira guilty, he was sentenced to 20 years' confinement.

An individual commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse" or "intentionally or knowingly threatens another with imminent bodily injury." Tex. Penal Code § 22.01(a)(1)-(2). An assault is an aggravated assault if a person commits an assault and causes serious bodily injury to another or uses or exhibits a deadly weapon during the offense. *Id.* § 22.02(a). Under the Penal Code, a deadly weapon is defined as "anything that in its manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(17). In this case, the deadly weapon alleged in the indictment was a clothing iron. Specifically, the indictment alleged that Alquicira "intentionally,

knowingly, or recklessly caused bodily injury to . . . Puente, by striking . . . Puente with an iron or unknown object, and used or exhibited a deadly weapon, namely, an iron or unknown object, during the commission of the assault."

*Legal Sufficiency of the Evidence*

In his first issue on appeal, Alquicira contends that the evidence supporting his conviction is legally insufficient. Specifically, Alquicira urges that the evidence was insufficient to show that his "acts caused the alleged injury" or that a deadly weapon was used during the offense. In making this claim, Alquicira primarily relies on his testimony regarding the alleged assault and describing the events leading up to the incident. But Alquicira also argues that some of the testimony offered by the other witnesses, including his children E.A. and N.A., is inconsistent with the allegations. For example, Alquicira notes that Puente did not seek any medical treatment for her injuries other than the treatment she received when a paramedic arrived on the scene shortly after the assault and that neither of his children testified that they saw him use the iron to injure Puente.

In a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In performing this analysis, the reviewing court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* at 319. In addition, reviewing courts must presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

2

During the trial, Alquicira testified that Puente was very drunk when he got home from work on the day before the incident, that he was afraid that she was going to hurt herself with a knife, and that he took it away from her and later left the home. Then, Alquicira related that he went back to the house the next day and that Puente was still drinking. Alquicira also explained that after he was home for a few hours, Puente started throwing household items around the house and demeaned him in front of their children, which led to an argument. Furthermore, Alquicira stated that because he was concerned about arguing in front of the children, he asked Puente to have a discussion in the bedroom. Regarding their interaction in the bedroom, Alquicira recalled that he decided to leave the room after Puente started throwing his clothes from the closet onto the ground. In addition, Alquicira related that Puente followed him and continued the argument. In his testimony, Alquicira admitted to pushing Puente away from him but denied physically striking or injuring her. Finally, when questioned about photos showing Puente's injuries, Alquicira reasoned that the injuries could have been caused by Puente falling off her bike or by Puente grabbing onto his car in an attempt to stop him from leaving before the alleged assault.

Before Alquicira testified, several witnesses, including Puente, were called to testify regarding what they observed during the alleged assault and shortly thereafter. In her testimony, Puente stated that on the day in question, Alquicira got very angry with her and then pulled her hair and threw her to the floor. Next, Puente testified that Alquicira started pushing her and throwing household items at her. Moreover, she explained that Alquicira continued to behave this way for hours. Later, she stated that Alquicira picked up an iron and started hitting her with the attached electrical cord. In addition, Puente discussed how after Alquicira finished hitting her with the cord,

he used the cord to swing the iron by her face repeatedly. When describing the experience, Puente testified that she thought that Alquicira was going to kill her with the iron and that Alquicira laughed at her as she pleaded for her life. Moreover, although she testified that she did not know for sure if the iron hit her on her back because she closed her eyes, she described a burning pain on her back.

After Puente testified, two of Alquicira and Puente's children testified. First, E.A. explained that after his parents started fighting, Alquicira followed Puente to her bedroom and locked the door. Further, he testified that he heard "[y]elling and screaming" coming from the bedroom. In addition, he related that he picked the lock to check on his mom after he heard her "screaming really very loudly."[1] When describing what he saw upon entering the bedroom, E.A. stated that he saw Alquicira yelling at Puente who was in the corner of the room and then later saw Alquicira repeatedly kick Puente. In addition, although E.A. did not testify that he saw Alquicira holding an iron, he did explain that he saw an iron on the floor and surmised that Alquicira might have used the iron earlier because "the bruises on her arm were too big to come from someone hitting her."

Next, N.A. testified about the incident. Specifically, she related that she heard her parents arguing and then heard Puente scream. Further, she explained that after she and E.A. went into the bedroom, she saw that Puente was in the corner of the room, that Puente "had purple bruises" on her body, that Puente's shirt had been torn, and that Alquicira "was holding the iron in his hand." She also testified that Alquicira threatened to kill her and her siblings if they talked to the police.

---

[1] We note that during the trial, the neighbor who called the police testified that he heard a woman pleading for help inside Alquicira's house.

4

In addition to individuals who witnessed the alleged assault, the State also called witnesses to testify about Puente's injuries. First, Deputy Steven Kelley testified that he responded to a 911 call concerning Alquicira's home. He explained that when he arrived, he heard a woman crying and noted that Alquicira seemed "upset, agitated and irritated." Moreover, Kelley related that after he went to a bedroom to check on Puente, he found her crying heavily and hyperventilating. When describing her appearance, Kelley stated that Puente's shirt had been torn and that she had "a red burn mark on her right forearm." More specifically, he stated that the burn was four inches long. Later, Kelley recalled that after Puente had been treated by EMS personnel, he observed other injuries that Puente had sustained including a large burn and bruise to her left arm and a red mark on her back. Kelley characterized those injuries as "serious" burns. Kelley also testified that he inspected the bedroom as part of his investigation and found an iron a few feet from where he found Puente and that the iron was plugged in and still "warm to the touch" although turned off.

Next, the paramedic who treated Puente, Vickie Hawkins, was called to testify. Hawkins related that when she began treating Puente, Puente was crying and hyperventilating. Hawkins also stated that Puente had burns and major bruises on her arm, shoulder, and back. Moreover, Hawkins explained that the bruising was caused by a force that had been applied to Puente's body and that the burns were second degree burns, meaning that part of the skin had been removed and that an infection could "set in." In addition, Hawkins agreed that the injuries were consistent with "someone being struck with an iron" and being burned by an iron. Furthermore, although Hawkins explained that Puente was initially reluctant to talk, Puente did reveal that Alquicira had used the iron to hurt and burn her.

5

During their testimonies, both Kelley and Hawkins explained that an iron could cause serious injury or death. More specifically, Kelley explained that an iron can cause "scarring, disfigurement, permanent disfigurement" and that an iron can also be used as a deadly weapon if it is used to strike somebody.

In addition to the testimony summarized above, numerous photos were admitted into evidence chronicling injuries and burns sustained by Puente.

In light of the evidence above and bearing in mind the jury's role in weighing the evidence and resolving conflicts in the testimony presented, we must conclude that the evidence is legally sufficient to support Alquicira's conviction for aggravated assault with a deadly weapon. Accordingly, we overrule his first issue on appeal.

*Right to Effective Assistance of Counsel*

In his second issue on appeal, Alquicira contends that his trial lawyer provided him ineffective assistance of counsel because he "failed to argue or raise objection to the State's Motion in Limine seeking to exclude any evidence of the victim's character or prior acts of violence against [Alquicira], or to present such evidence by other means." In this issue, Alquicira also contends that his trial counsel's conduct was deficient because he "failed to investigate the veracity of the claims presented and to present expert rebuttal evidence to the State's argument as to how the injuries were caused though funds were authorized by the Court."

In general, a direct appeal is not an adequate means to present an ineffectiveness claim because the record is usually undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "This is true with regard to the question of deficient performance . . . where

6

counsel's reasons for failing to do something do not appear in the record." *Id.* (explaining that "counsel's conduct is reviewed with great deference, without the distorting effects of hindsight"). Trial attorneys should be given the opportunity to clarify their actions before being deemed ineffective. *Id.* In the absence of that opportunity, an appellate court should not conclude that an attorney's performance was ineffective unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

Alquicira's ineffectiveness claims all stem from omissions by his trial attorney, and the record is not sufficiently developed to evaluate those omissions because "[n]either [his] counsel nor the State have been given an opportunity to respond to" the allegations. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Moreover, based on this record, we do not believe that the alleged omissions are so outrageous that no competent attorney would have committed them. Accordingly, we cannot conclude that Alquicira was denied his right to effective assistance of counsel.

Although we need not address the matter further, we do note that appellate courts look to the totality of representation provided by an attorney when assessing his effectiveness. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In this case, Alquicira's counsel did express frustration at his client's behavior during trial, but he also successfully moved to have two charges against Alquicira dismissed, extensively questioned the jury panel regarding their abilities to serve, moved to strike various potential jurors for cause, informed the jury panel about the State's burden, successfully objected to the testimony of witnesses on various grounds, cross-examined the

7

State's witnesses, requested a directed verdict in his client's favor, discussed with Alquicira the advantages and disadvantages to testifying, and requested a lesser-included charge of assault. Moreover, during his closing, Alquicira's attorney emphasized the State's burden, discussed how Puente did not seek any further medical treatment, suggested that there were no medical reports admitted during the trial because the injuries were not severe enough, questioned Puente's credibility, and successfully objected to statements made by the State during its closing. Finally, in the punishment phase, Alquicira's attorney cross examined the State's witnesses and called various witnesses to testify on Alquicira's behalf.

In light of the above, we overrule Alquicira's second issue on appeal.[2]

*Constitutionality of Alquicira's Sentence*

In his third and fourth issues, Alquicira asserts that the length of his sentence, 20 years, is unconstitutional because the sentence is "grossly disproportionate to the crime and inappropriate to the offender." In particular, Alquicira contends that his sentence violates section 13 of article I of the Texas Constitution and the Eighth Amendment of the United States Constitution, which both prohibit cruel or unusual punishments. *See* U.S. Const. amend. VIII; Tex. Const. art. I, § 13. As support for this assertion, Alquicira notes that he was given the maximum punishment authorized but also notes that he had no prior felony convictions and was eligible for probation.

---

[2] Generally speaking, claims that have been rejected in a direct appeal are "not cognizable on habeas corpus." *Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex. Crim. App. 2004). However, if an appellate court "rejects a claim of ineffective assistance of counsel because the record on direct appeal does not contain sufficient information to adequately address and resolve a particular allegation of counsel's deficient performance," that claim may be considered "in a later habeas corpus proceeding if he provides additional evidence to prove his claim." *Id.*

Further, he contends that the facts did not support the punishment, particularly the fact that Puente did not seek additional medical treatment. For these reasons, Alquicira insists that he "is entitled to a reversal and to a new punishment hearing."

Alquicira did not raise these constitutional issues in either of his motions for new trial, nor did he challenge the sentence when it was assessed during the punishment hearing. Accordingly, he has waived both of these issues on appeal. *See Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, no pet.) (explaining that "[t]o preserve error for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired").

Even assuming that his claims were not waived, we would be unable to sustain either of his issues. This Court has previously recognized that the "power to define criminal offenses and prescribe their punishments resides in the legislature." *Francis v. State*, 877 S.W.2d 441, 444 (Tex. App.—Austin 1994, pet. ref'd) (per curiam). For that reason, this Court has also concluded that section 13 of article I "is not violated when the punishment assessed is within the limits prescribed by statute." *Id.*; *see Thomas v. State*, 916 S.W.2d 578, 584 (Tex. App.—San Antonio 1996, no pet.). As Alquicira concedes, his punishment fell within the range allowable by statute. *See* Tex. Penal Code § 12.33(a) (setting out punishment ranges for second-degree felony). Accordingly, the length of his punishment does not violate the Texas Constitution.

Regarding his federal claims, sentences falling within the applicable statutory range typically do not violate the Eighth Amendment. *King v. State*, No. 03-12-00776-CR, 2013 Tex.

9

App. LEXIS 4528 (Tex. App.—Austin Apr. 10, 2013, pet. ref'd) (mem. op.) (not designated for publication). Moreover, "[m]uch deference must be accorded to the legislature's authority and the discretion vested in the jury in assessing punishment." *Thomas v. State*, 916 S.W.2d 578, 584 (Tex. App.—San Antonio 1996, no pet.). When reviewing a claim that a sentence is grossly disproportionate to the crime, courts consider "the gravity of the offense compared to the harshness of the penalty," giving "proper deference to the policy judgments that find expression in the legislature's choice of sanctions." *Ewing v. California*, 538 U.S. 11, 28-29 (2003).

Given the record before this Court, we cannot conclude that the sentence assessed was grossly disproportionate to the gravity of the offense. In reaching this resolution, we are mindful of the legislature's decision to impose harsher sentences on individuals who assault members of their own family. *See* Tex. Penal Code §§ 22.02(b) (elevating offense level if aggravated assault is committed against family member), 22.01(b)(2) (raising offense level for assaults committed against family member). The evidence demonstrated that Alquicira assaulted his wife in front of their children. Further, the testimony presented and the photographs admitted into evidence showed the severity of the injuries inflicted on Puente. In addition, Alquicira testified during the trial, and the jury was able to assess his demeanor and credibility. Finally, the jury heard testimony from one of Alquicira's children stating that Alquicira threatened to kill his children if they discussed the assault with the police.[3]

---

[3] Although Alquicira complains about the length of his sentence for the second-degree felony for which he was charged, the State could have charged Alquicira with a first-degree felony. Under the Penal Code, aggravated assault is a first degree felony if "the actor uses a deadly weapon during the commission of the assault and causes serious bodily injury to a person whose relationship to or association with the defendant is described by" the Family Code. Tex. Penal Code § 22.02(b). The punishment for first degree felonies ranges from 5 years to 99 years. *Id.* § 12.32(a).

For the reasons previously given, we overrule Alquicira's third and fourth issues on appeal.

## CONCLUSION

Having overruled all of Alquicira's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed:   March 5, 2014

Do Not Publish