02-11-421-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00421-CR

 

 


 
 
 OSCAR GUERRERO
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

FROM THE 211ST District Court OF
DENTON COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I. Introduction

Appellant
Oscar Guerrero appeals his conviction for aggravated sexual assault of a child.
 In two issues, Guerrero complains of the trial court’s permitting a lay
witness to give expert opinion testimony and of the jury instruction on good
conduct time.  We will affirm.  

II.  Factual and Procedural Background

Amber
came to the United States from Mexico and lived with her infant daughter, Emma,
and a family friend, Jorge Limones.[2]  Amber began living with
Guerrero, whom Emma referred to as “Papa.”  Approximately two years later, in
2006, Amber’s other daughter, Ana, came to the United States from Mexico.  At
the time, Ana was seven years old, and Emma was two years old.  Amber testified
that Ana was jealous of Emma and Guerrero’s relationship.  

In 2007,
when Emma was about three years old, she made an outcry of sexual abuse against
Limones.  Amber testified that just before Emma made the outcry, she started
kissing on Amber’s neck at night, breathing heavily, trying to kiss Amber on
the mouth, and putting her legs over Amber.  When Emma did these things, she
would suddenly urinate on herself.  After Emma’s outcry, Ana asked Amber and
Guerrero why Emma was receiving so much attention.  Guerrero told Ana that Emma
was going through a very difficult process and not to bug her.   

In
2008, when Ana was nine years old, she also made an outcry of sexual abuse against
Limones.  Amber testified that Ana did not exhibit the same behavior that Emma
had prior to her outcry.

In
preparation for trial against Limones, Amy Derrick, a Dallas County District
Attorney’s Office felony prosecutor, interviewed Ana about her allegation
against Limones.[3]  During the interview,
Ana broke down in tears and made an outcry of sexual abuse against Guerrero.  Ana
said that he had “been doing things to her,” such as putting his finger into
her “private” and that he had done such things six or seven times.  Ana said
that Guerrero would tell her to go take a bath while Emma was watching
television.  Ana said that he would then come into the bathroom, touch her all
over her body, take her to the bedroom, and put his finger inside her private
area.  Ana would yell, her sister would come in the room, and then Guerrero
would leave.  Ana said that she did not tell her mother because her mother
loved Guerrero, he paid the bills, and Ana was afraid that her mother would get
mad at her.

Detective
Abel Lopez with the Dallas Police Department interviewed Guerrero and
videotaped the interview.[4]  Guerrero told Detective
Lopez that he would bathe Ana, and when Detective Lopez asked why he was
bathing a ten-year-old girl, Guerrero replied, “I don’t know. . . .  I . . .
struggle to not do anything but I feel that there is something in me that is
not well.”  Detective Lopez asked Guerrero how many fingers he put inside Ana
and which part of the finger.  Guerrero indicated his right index finger down
to the first knuckle.  Guerrero said that Ana had some boils on her vagina and
that he used his finger to put medicating cream on them.  

Dora
Casas, a Dallas Children’s Advocacy Center employee, testified about an
interview she conducted with Ana following her outcry against Guerrero.  Ana
told Casas that she was nine years old the first time that Guerrero did
something to her.  She was asleep in the living room but woke up because she
felt her clothes being pulled down.  Guerrero put his finger inside her.  When
Guerrero heard Amber coming, he covered Ana with a blanket.  Ana also told
Casas about a separate occasion in the bedroom in which Guerrero asked Ana to
see something, and he spread her legs apart.  Ana said that Guerrero put his
fingers inside her vagina, and she described something white and sticky that he
took out of her and showed to her. 

Guerrero’s
defense at trial was that Ana fabricated the allegations against both him and Limones
after seeing the attention that Emma received from her outcry against Limones. 
Amber testified that after Guerrero was arrested, Ana told her on two separate
occasions that Guerrero never did anything to her. 

The
jury convicted Guerrero of aggravated sexual assault of a child under the age
of fourteen and assessed punishment at forty years’ confinement.  The trial
court sentenced him accordingly.

III.   Admission of Detective Lopez’s Testimony

In
his first issue, Guerrero complains that the trial court abused its discretion
by allowing Detective Lopez to express his belief about how individuals who
abuse children target their victims.

We
review a trial court’s decision to admit or exclude evidence under an abuse of
discretion standard.  Green
v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App.
1996), cert. denied, 520
U.S. 1200 (1997); Montgomery
v. State, 810 S.W.2d 372, 379–80 (Tex. Crim. App.
1990).  We will not reverse a trial court as long as its ruling was within the “zone
of reasonable disagreement.”  Green, 934
S.W.2d at 102; Montgomery, 810
S.W.2d at 391.  The appropriate inquiry is whether the court acted without
reference to any guiding rules and principles.  Montgomery, 810 S.W.2d at 380.

Texas
Rule of Evidence 701 provides that a lay witness may testify in the form of
opinions or inferences limited to those opinions or inferences that are (1)
rationally based on the perception of the witness and (2) helpful to a clear
understanding of the witness’s testimony or the determination of a fact in
issue.  Tex. R. Evid. 701.  As a general rule, “observations which do not
require significant expertise to interpret and which are not based on a
scientific theory can be admitted as lay opinions if the requirements of Rule
701 are met.  This is true even when the witness has experience or training.”  Osbourn
v. State, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002).  Even events not
normally encountered by most people in daily life do not necessarily require
expert testimony to be understood.  Id.  Thus, a lay witness may be
capable, due to personal experience and knowledge, of expressing an opinion on
a subject outside the realm of common knowledge.  Id.  “It is only when
the fact-finder may not fully understand the evidence or be able to determine
the fact in issue without the assistance of someone with specialized knowledge
that a witness must be qualified as an expert.”  Id.

In
this case, the following exchange occurred between the prosecutor and Detective
Lopez on direct examination: 

Q.  Obviously, in
this particular instance, we have a scenario where you have one child saying
more than one individual has sexually abused her.  Correct?

 

A.  Yes.

 

Q.  Is that something
that unfortunately you encounter with some regularity in your job?

 

A.  Yes,
we do.

 

Q.  Detective,
explain for me in your experience how that happens or why that is.

 

A.  In the cases that
I have personally been involved in and helped other detectives in my unit be
involved in, usually what happens is when there’s a second or a third suspect
that abuses a child, it seems that they find a weakness or they take the
previous abuse as a weakness in the child.  And my experience has been that
they take advantage of that weakness. 

 

Q.  Has it been your
experience that—and just to kind of follow up on what you just said, has it
been your experience that individuals who sexually abuse children are fairly
specific in which children they target?

 

[DEFENSE]:  Objection,
Judge.  There’s been no showing that he’s an expert on psychology or the
therapy of child abuse victims.

 

THE COURT: Sustained.


 

          . . . .

 

Q.  And based on that
training and experience over the last seven years, do you have an opinion as to
how individuals who target children—or abuse children target those particular
children?

 

[DEFENSE]:  Judge,
same objection.  He’s—he’s—has a lot of experience as a policeman, as an
interrogator.  Still, he’s not showing any expertise relating to the psychology
or any of the therapeutic issues with the child. 

 

THE COURT:  He can
offer his lay opinion on the subject.  Overruled.

 

Q.  Do you have an
opinion on that, detective?

 

A.  Yes, sir, I do.

 

Q.  Would you please
tell me what that is.

 

A.  Again, in investigating these cases and especially
in talking to the suspects in the cases, again, it’s—it’s—it becomes apparent
during my interviews that they look for those weaknesses.  Even though sometimes
they don’t actually state that, but just based on statements that they make, it
does become apparent that they look for weaknesses in the victims.  [Emphasis
added.]

Detective
Lopez later opined that Guerrero knew of Ana’s vulnerabilities and prior sexual
assault allegations against Limones and that Guerrero targeted those weaknesses. 


Detective
Lopez testified that he had nearly seven years of experience as a child abuse
detective and that part of his job is to investigate child abuse allegations
and interview people charged with sexual abuse of children.  Detective Lopez said
that he is trained on how to investigate and interrogate child abusers and that
he has personally dealt with hundreds of child abuse cases and has interviewed the
perpetrators on hundreds of occasions.

Detective
Lopez’s testimony established that he possessed extensive practical experience as
a child abuse detective and that, due to his personal experience and knowledge,
he was capable of expressing an opinion of how child abusers target children.  See
id.; Hollis v. State, 219 S.W.3d 446, 467 (Tex. App.—Austin 2007, no
pet.); Roberson v. State, 100 S.W.3d 36, 39 (Tex. App.—Waco 2002, pet.
ref’d); see also Thomas v. State, 916 S.W.2d 578, 580–81 (Tex. App.—San
Antonio 1996, no pet.) (noting that a police officer’s personal knowledge may
come from past experience).  Further, his testimony was not based on a scientific
theory and did not require significant expertise to interpret.  See Osbourn,
92 S.W.3d at 537; Scott v. State, 222 S.W.3d 820, 828–29 (Tex. App.—Houston
[14th Dist.] 2007, no pet.).  Having examined the entirety of Detective
Lopez’s testimony, we conclude that the trial court did not abuse its
discretion by admitting his testimony as lay opinion testimony under Rule 701. See
Tex. R. Evid. 701.  We overrule Guerrero’s first issue. 

IV.   Issuance of Statutorily-Mandated Jury Charge

In
his second issue, Guerrero argues, as he did at trial, that the trial court’s
charge to the jury concerning the possibility of good conduct time “[did] not
fit within the constitutional safeguard of section 11(a) of the Texas [c]onstitution
and therefore” violated the separation of powers doctrine of, and his right to due
course of law under, the Texas constitution.[5] 


In
crafting its charge to the jury at the punishment phase of trial, a trial court
is bound to comply with the mandatory language of article 37.07, section 4 of
the Texas Code of Criminal Procedure.  See Tex. Code Crim. Proc. Ann.
art. 37.07, § 4 (West Supp. 2012).  That article requires that the trial court
must inform the jury of the existence and mechanics of parole law and good
conduct time.  Id.  The overall purpose of the instructions is to inform
jurors of these concepts as a general proposition, but the instructions clearly
prohibit the jury from considering how the concepts of “good conduct time” and
parole might be applied to any particular defendant.  Luquis, 72
S.W.3d at 360.

A
person convicted of certain enumerated offenses (including the offense of
aggravated sexual assault of a child), however, is not eligible for release on
mandatory supervision, regardless of how much good conduct time he might
accrue; his good conduct time does not make him eligible for parole any sooner
than he would be without the good conduct time credits.  See Tex. Gov’t
Code Ann. § 508.149(a) (West 2012); Tex. Penal Code Ann. § 22.021(a)(1)(B), (e)
(West Supp. 2012); Luquis, 72 S.W.3d at 362.  Thus, when the jury has
found the defendant guilty of one of the offenses set forth in government code
section 508.149(a), the portion of the statutorily-mandated jury charge
discussing good conduct time only marginally applies to that defendant.  See
Luquis, 72 S.W.3d at 362.  This has led some defendants to argue that the
jury instruction on good conduct time is a misstatement of the law as it
applies to them and is therefore a violation of due process rights; however,
this argument has been rejected by the court of criminal appeals and this court. 
See id. at 365 n.29; see also, e.g., Sanders v. State, 255
S.W.3d 754, 765–66 (Tex. App.—Fort Worth 2008, pet. ref’d) (holding article
37.07, § 4(a) charge did not violate appellant’s due process rights); Cagle
v. State, 23 S.W.3d 590, 594 (Tex. App.—Fort Worth 2000, pet. ref’d)
(same).

Guerrero
recognizes that the court of criminal appeals has held that article
37.07, section 4(a) is constitutional under the due course of law provision of the
Texas constitution and the due process of law provision of the United States
Constitution.  Luquis, 72 S.W.3d at 362–64, 368.  Guerrero
argues, however, that article 37.07, section 4(a), as applied to him, does not
fall within the constitutional safeguard of article IV, section 11(a) of the
Texas constitution and is unconstitutional for the reasons stated in Rose v.
State, 752 S.W.2d 529 (Tex. Crim. App. 1987) (op. on reh’g).  In Rose,
the court of criminal appeals held that article 37.07, section 4 violated the
separation of powers and the due course of law provisions of the Texas constitution. 
752 S.W.2d at 552–53.  Since then, however, Texas citizens voted to amend
article IV, section 11(a) of the Texas constitution to explicitly authorize the
Texas legislature to enact “laws that require or permit courts to inform juries
about the effect of good conduct time and eligibility for parole or mandatory
supervision on the period of incarceration served by a defendant convicted of a
criminal offense.”  See Tex. Const. art. IV, § 11(a); Luquis, 72
S.W.3d at 361 (noting that article IV, section 11(a) was amended “presumably in
reaction to this Court’s decision in Rose”); see also Edwards v.
State, 807 S.W.2d 338, 340 (Tex. App.—Houston [14th Dist.] 1991, pet. ref’d)
(holding that the constitutional amendment eliminated “the Rose issue”).


Because
the article 37.07, section 4(a) jury instruction neither violated Guerrero’s right
to due course of law nor constitutes a separation of powers violation, the
trial court did not err by including it in its jury charge.  We overrule
Guerrero’s second issue.

V. Conclusion

Having overruled both of Guerrero’s issues, we affirm the
trial court’s judgment.

 

 

PER CURIAM

 

PANEL: 
WALKER, MEIER, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 25, 2012

 



 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00421-CR

 

 


 
 
 Oscar
 Guerrero
  
  
  
 v.
  
  
  
 The
 State of Texas
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 211th District
 Court
  
 of
 Denton County (F-2010-1700-C)
  
 October
 25, 2012
  
 Per
 Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

 

SECOND DISTRICT COURT OF APPEALS 

 

 

PER
CURIAM

 

 









[1]See Tex. R. App. P. 47.4.





[2]To protect the anonymity
of the children in this case, we will use aliases to refer to some of the
individuals named herein.  See Daggett v. State, 187 S.W.3d 444, 446 n.3
(Tex. Crim. App. 2005); McClendon v. State, 643 S.W.2d 936, 936 n.1
(Tex. Crim. App. [Panel Op.] 1982).  





[3]Limones ultimately pleaded
guilty to injury to a child.  





[4]Detective Lopez testified
that the north Dallas apartment where Guerrero and Amber lived was in Denton
County.   





[5]Guerrero made no
distinction between his rights under the Texas and federal constitutions; therefore,
these rights may be treated as the same in this context.  See Luquis v.
State, 72 S.W.3d 355, 364 (Tex. Crim. App. 2002).