Alan Enrique CULTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–01–00423–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 7, 2002.

Jay W. Burnett, Houston, for Appellant.

Carmen Castillo Mitchell, Assistant District Attorney, Houston, for State.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

## OPINION

TIM TAFT, Justice.

A jury found appellant, Alan Enrique Culton, guilty of sexual assault of a child. Having found true an enhancement paragraph alleging appellant's prior conviction for aggravated sexual assault, the jury assessed punishment automatically at life in prison. We address (1) whether appellant's automatic life sentence upon conviction for his second sex offense constitutes cruel and unusual punishment and (2) whether the trial court erred in sustaining the State's objection to defense counsel's definition of "reasonable doubt" during argument. We affirm.

### Facts

In early August 1999, appellant met M.W., a 16–year–old female, at a bus stop. Appellant was 34 years old. M.W. told appellant she was 16 years old, and they exchanged phone numbers. The two began dating soon thereafter. They also began engaging in consensual sexual inter-

course. M.W.'s mother was unaware of the relationship.

In January 2000, M.W. became pregnant. M.W.'s mother discovered M.W.'s pregnancy in April 2000 and contacted the police. Charges were filed against appellant on June 19, 2000. The child was born on September 9, 2000 and was named after appellant. DNA results showed a 99.99999994% certainty of appellant's paternity. Appellant was found guilty of sexual assault of a child.

During the punishment phase, appellant entered a plea of "not true" to an enhancement paragraph alleging one prior aggravated-sexual-assault conviction. The State introduced evidence of appellant's prior felony conviction for the alleged aggravated sexual assault, as well as for aggravated kidnapping (committed on the same date as the aggravated sexual assault) and sexual assault stemming from a separate incident in 1986. Appellant had pled guilty in 1987 to the three charges and had been sentenced to 20 years on each case. The State also introduced evidence of unadjudicated extraneous offenses appellant had committed in late 1999 and early 2000. In separate incidents, appellant had sexually assaulted an adult female and committed aggravated sexual assault against her nine-year-old daughter. The jury found the enhancement paragraph "true" and assessed punishment at life in prison.

### Proportionality of Mandatory Life Sentence

In his first point of error, appellant contends that his mandatory life sentence, pursuant to section 12.42(c) of the Texas Penal Code, is disproportionate to his crime and violates the Eighth Amendment

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at
Houston, participating by assignment.

of the U.S. Constitution.[1] *See* U.S. CONST. amend. VIII; TEX. PEN.CODE ANN. § 12.42(c)(2) (Vernon Supp.2002).

Appellant argues that his sentence is disproportionate to his crime, particularly because he will not be eligible for parole until he serves 35 years. Appellant compares his sentence to that of a convicted murderer who, even as an habitual criminal with two prior felony convictions, faces only 25 years to life, with parole eligibility coming after half the calendar time served or 30 years, whichever is less.

■ The Fort Worth Court of Appeals thoughtfully considered this issue just last year in *Moore v. State,* 54 S.W.3d 529 (Tex.App.-Fort Worth 2001, pet. ref'd). We agree with that court's approach. We first make a threshold comparison of the offense against the severity of the sentence, judging the gravity of the offense in light of the harm caused or threatened to the victim or society and the culpability of the offender. *Id.* at 542. Only on determining that the sentence is grossly disproportionate to the offense do we need to consider the other two factors from *Solem v. Helm,* namely, sentences imposed on other criminals in the same jurisdiction and sentences imposed for commission of the same crime in other jurisdictions. 463 U.S. 277, 292, 103 S.Ct. 3001, 3011, 77 L.Ed.2d 637 (1983).

■ We also consider the mandatory life sentence imposed as reflecting the seriousness of appellant's most recent offense, not standing alone, but in light of his prior offenses. *Moore,* 54 S.W.3d at 543 (citing *McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.1992)). We interpret prior offenses to include both adjudicated and unadjudicated offenses because, in Texas, both types of offenses may be introduced into evidence for consideration at the punishment stage of trial. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2002).

■ Sexual assault of a child is a second-degree felony in Texas, with a punishment range of from two to 20 years and a fine of up to $10,000. *See* TEX. PEN.CODE ANN. §§ 12.33, 22.011(a)(2)(A), (f) (Vernon 1994 & Supp.2002). Appellant was 34 years old when he engaged in a consensual sexual relationship with the 16–year–old complainant. Consensual statutory sexual assault is not the most aggravated manner of committing sexual assault. It is possible to commit sexual assault in a more violent manner by forcing or threatening the victim, but even then, the maximum confinement is 20 years. Thus, were we considering the primary offense alone, the sentence would appear to be grossly disproportionate to the crime.

In 1987, however, appellant pled guilty to the offenses of aggravated kidnapping, aggravated sexual assault, and sexual assault. Although the record does not reflect the underlying facts of those offenses, two are first-degree felonies, and one is a second-degree felony. The record does reflect the underlying facts of the unadjudicated offenses of sexual assault and aggravated sexual assault, however. The first is a second-degree felony, and the second is a first-degree felony. All of appellant's crimes were committed against persons. Although it is possible to commit aggravated kidnapping without violence or threat of violence, *see* TEX. PEN.CODE ANN. § 20.04(a) (Vernon 1994), aggravated sexual assault and sexual as-

**1.** The State claims appellant waived this point of error by failing to object in the trial court, as well as by failing to raise the issue in a motion for new trial. Appellant claims he did not need to preserve this challenge. Given our disposition, we need not decide whether appellant had to preserve his challenge.

sault must have involved either an underage or elderly victim, lack of consent, or force. *See* Tex. Pen.Code Ann. §§ 22.011(a), (b), 22.021(a)-(c) (Vernon 1994). As for the unadjudicated offenses, the aggravated sexual assault was against an underage, nine-year-old victim, and the sexual assault involved violence against an adult female.

Considering appellant's primary offense in the context of his very serious prior criminal history, we cannot say that an automatic life sentence is so cruel and unusual as to constitute a violation of the Eighth Amendment. *See McGruder,* 954 F.2d at 316–17 (holding life sentence without hope of parole was not cruel and unusual for crime of auto burglary when defendant had prior convictions for armed robbery, burglary, escape, and armed robbery); *see also Moore,* 54 S.W.3d at 542–43 (holding automatic life sentence was not cruel and unusual for crime of burglary of habitation with intent to commit indecency with child when defendant had prior conviction for indecency with child). *Compare Solem,* 463 U.S. at 279–80, 302–03, 103 S.Ct. at 3004–05, 3016–17 (holding life sentence with no possibility of parole cruel and unusual punishment for passing a $100 no-account check when the predicate offenses were six non-violent felonies, none committed against a person, and all involving alcohol as a contributing factor); *Rummel v. Estelle,* 445 U.S. 263, 265–66, 100 S.Ct. 1133, 1135, 63 L.Ed.2d 382 (1980) (holding life sentence for obtaining $120.75 by false pretenses cruel and unusual punishment when the predicate offenses were passing a no-account check and passing a forged check).

After comparing the facts and circumstances of this case with those in the cases above, we conclude that appellant's situation is much more like the defendants' situations in *Moore* and *McGruder* than the defendants' situations in *Solem* and *Rummel.* We hold that appellant's automatic life sentence was not so grossly disproportionate to his crime as to constitute cruel and unusual punishment.

Accordingly, we overrule appellant's first point of error.

### Closing Argument Objection

In his second point of error, appellant contends that the trial court erred in sustaining the State's objection to defense counsel's definition of "reasonable doubt" during closing argument. Appellant acknowledges that his guilt was a foregone conclusion, but he claims that this circumstance magnified the harm appellant suffered from the State's improper objection.

This Court addressed the applicable standard of review in *Grant v. State,* 738 S.W.2d 309 (Tex.App.-Houston [1st Dist.] 1987, pet. ref'd), as follows:

> It is well recognized that the State and the accused are entitled to give reasonable explanations of the law. However, no party may make a statement of what purports to be the law, when the same is not contained in the court's charge. Any argument that contains a statement of the law contrary to the court's charge is erroneous and is an improper argument. Error in the argument does not lie in going beyond the charge, but lies in stating the law contrary to the same.

*Id.* at 311 (citations omitted).

During argument, defense counsel began explaining reasonable doubt as "a doubt based on reason and common sense, after a careful and impartial consideration...." The State objected that "[t]his is the very same definition that the Court of Criminal Appeals has said is not to be used." The trial court sustained the State's objection. Defense counsel then continued his argument by stating, "Then, you have to use your own imagination as to

what you consider a reasonable doubt. Consider any doubt; then ask yourself: Is it reasonable that I have that doubt?"

Defense counsel's explanation of reasonable doubt comes from language in the jury charge formerly mandated by *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App. 1991), *overruled in part on same grounds by Paulson v. State,* 28 S.W.3d 570 (Tex. Crim.App.2000):

> A *"reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case.* It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.
>
> Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

*Geesa,* 820 S.W.2d at 162 (emphasis added).

Nine years later, the Court of Criminal Appeals overruled *Geesa*'s holding requiring trial courts to give a reasonable-doubt definition. *See Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim.App.2000). In doing so, the *Paulson* court broke down the *Geesa* definition quoted above into its three constituent sentences. *See id.* at 572. According to the *Paulson* court, the first sentence of the *Geesa* definition (italicized above)—which is the same definition appellant's counsel sought to use in closing argument—was "useless" because "[i]t is like saying 'A white horse is a horse that is white.'" *Id.* In contrast, the *Paulson* court concluded that the second and third sentences of the *Geesa* definition (without italics above) were "troubling" and even partially "fallacious":

> The second definition and what purports to be the third definition are more troubling because the use of "hesitation" is ambiguous.

In addition, the third "definition" is not really a definition at all. Instead, it is a fallacious application of the second definition. The court says that reasonable doubt makes you hesitate to act; therefore, if you hesitate to act, you have a reasonable doubt. That is like saying, "Pneumonia makes you cough; therefore, if you cough, you have pneumonia." This is the logical fallacy called "affirming the consequent."

> If a conscientious juror reads the *Geesa* charge and follows it literally, he or she will never convict anyone. Considerations utterly foreign to reasonable doubt might make a person hesitate to act. The gravity of the decision and the severity of its consequences should make one pause and hesitate before doing even what is clearly and undoubtedly the right thing to do. Judgments that brand men and women as criminals, and take their money, their liberty, or their lives are deadly serious. They are decisions that make us hesitate if we have any human feelings or sensitivity at all. So to convict, a juror must either ignore the definition, refuse to follow it, or stretch it to say something it does not say.

*Paulson,* 28 S.W.3d at 572.

> The *Paulson* court ultimately overruled that portion of *Geesa* which requires trial courts to instruct juries on the definition of "beyond a reasonable doubt." ... *We find that the better practice is to give no definition of reasonable doubt at all to the jury.* On the other hand, *if both the State and the defense were to agree to give the Geesa instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement.*

*Id.* at 573 (emphasis added).

*Paulson* was a jury-charge case, not a jury-argument case. Had the trial court

denied a request by appellant's counsel to include the proffered reasonable-doubt instruction from *Geesa* in the jury charge, we would hold that the trial court did not err. *See id.* However, appellant did not seek a jury instruction. He instead sought to explain reasonable doubt by using part of the *Geesa* definition in jury argument. This is a materially different situation from that in *Paulson.*

Despite this difference, at least one court of appeals has applied *Paulson*'s reasoning to a jury argument incorporating *Geesa*'s reasonable-doubt instruction. *See Billy v. State,* 77 S.W.3d 427 (Tex. App.-Dallas 2002, pet. filed). We agree with *Billy,* but find it distinguishable. The *Billy* court upheld a ruling sustaining an objection to a jury argument on reasonable doubt. As here, defense counsel in *Billy* attempted to explain reasonable doubt to the jury in terms of the *Geesa* definition. *See id.* at 429-30. However, defense counsel in *Billy* incorporated the idea of "hesitancy" from the second and third sentences of the *Geesa* reasonable-doubt definition. *Id.* It was the "hesitancy" aspect of the *Geesa* reasonable-doubt definition that the *Paulson* court had "disavowed" because the definition placed "too great a burden upon the State," the *Billy* court concluded. *Id.* at 430 (relying on *Paulson,* 28 S.W.3d at 571–72). Because defense counsel had tried to incorporate the rejected hesitancy definition from *Geesa,* the *Billy* court held that there was no error in sustaining the State's objection to the argument. *Id.* at 430–31.

In contrast to the argument in *Billy,* defense counsel's argument in this case did not incorporate the rejected hesitancy portion of *Geesa*'s reasonable-doubt definition. Instead, counsel's argument incorpo-

rated the portion of the *Geesa* reasonable-doubt definition that the *Paulson* court determined was merely "useless," but which the court did not reject. *See Paulson,* 28 S.W.3d at 572.

We agree with the *Billy* court that *Paulson*'s reasoning applies to jury arguments that incorporate the rejected hesitancy portions of *Geesa*'s reasonable-doubt definition. Therefore, a trial court does not err in sustaining an objection to this specific jury argument. *See Arnold v. State,* 68 S.W.3d 93, 102 (Tex.App.-Dallas 2001, pet. ref'd) (holding that defense counsel may not make inaccurate or misleading statements in argument about State's burden of proof); *Grant,* 738 S.W.2d at 311 (holding, "Error in the argument does not lie in going beyond the charge, but lies in stating the law contrary to the same."); *cf. Paulson,* 28 S.W.3d at 571–72 (concluding hesitancy aspects of *Geesa* charge were "troubling," used partially "fallacious" logic, and required jury to ignore, refuse to follow, or stretch definition to convict).

However, we decline to extend *Billy*'s (and thus *Paulson*'s) holding to the situation before us, in which counsel sought to use language from the non-hesitancy portion of *Geesa*'s reasonable-doubt definition, because the Court of Criminal Appeals has concluded that that language is merely useless, as opposed to misleading. Accordingly, we hold that defense counsel should have been allowed to incorporate the non-hesitancy portion of the *Geesa* reasonable-doubt definition into his argument.[2]

Any error, however, was cured. Immediately after the trial court's ruling, defense counsel argued without objection that "you have to use your own imagination as to what you consider a reasonable doubt. Consider any doubt; then ask

---

2. To the extent that sustaining the State's objection prevented counsel from arguing the

*entire* reasonable-doubt definition from *Geesa,* the court's ruling was appropriate. However,

yourself: Is it reasonable that I have that doubt?" This argument is essentially the same as the portion of the *Geesa* reasonable-doubt definition that counsel had originally sought to argue and that the *Paulson* court had found useless, but not improper. Moreover, even if counsel had not been allowed to repeat his argument, we would have held that any error was clearly harmless because (1) the Court of Criminal Appeals has determined the proffered definition is useless and (2) appellant acknowledges that the evidence was so overwhelming as to make his guilt a foregone conclusion. *See* TEX.R.APP. P. 44.2.

Accordingly, we overrule appellant's second point or error.

### Conclusion

We affirm the judgment of the trial court.

the trial court should have allowed defense counsel to argue the non-hesitancy portion of *Geesa*'s reasonable-doubt definition fully before stopping the argument.