Affirmed and Memorandum Opinion filed December 9, 2010.

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00787-CR

NO. 14-09-00788-CR

___________________

 

MICHAEL ROBIN DEESE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On
Appeal from the 248th District Court

Harris County,
Texas



Trial Court Cause Nos. 1224254 & 1131862

 



 

 

MEMORANDUM  OPINION

Appellant
entered guilty pleas to two charges of theft of over $200,000, without an
agreed recommendation on punishment.  The trial court ordered a pre-sentence
investigation.  After a punishment hearing, the trial court assessed punishment
at confinement in the Institutional Division of the Texas Department of
Criminal Justice for thirty-five years in each case, with the sentences to be served
concurrently.  Appellant challenges his sentences on appeal.  We affirm. 

In a single
issue, appellant contends that his punishment is grossly disproportionate to
the crimes committed, violating his freedom from cruel and unusual punishment.[1]  He asserts that his sentences are disproportionate
to the crimes because he had no prior felony criminal record, his crimes were
not violent, he admitted his guilt and helped one victim recover part of its
loss, both victims were able to recover part of their losses from insurance
proceeds, and he could have made restitution if he had been placed on
probation.

To preserve a
complaint for appellate review that a sentence is grossly disproportionate,
constituting cruel and unusual punishment, a defendant must present to the
trial court a timely request, objection, or motion stating the specific grounds
for the ruling desired.  See Tex. R. App. P. 33.1(a); Nicholas v.
State, 56 S.W.3d 760, 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d)
(holding that failure to complain to trial court that sentences were cruel and
unusual waived claim of error for appellate review).  Here, after the trial
court announced its sentence at the punishment hearing, appellant made no
objection to the trial court about the punishment assessed.  In addition,
appellant did not move for a new trial.  Accordingly, appellant has waived his complaint.
 

Even if appellant had preserved this complaint, he would not prevail.  We
review the punishment imposed by the trial court for an abuse of discretion.  Jackson
v. State, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984).  As a general rule, if
the sentence assessed is within the statutory limits, it is not cruel and
unusual punishment and will not be disturbed on appeal.  Buerger v. State,
60 S.W.3d 358, 365 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d).  Appellant
argues that although a sentence may be within the statutory range, “it may
nevertheless run afoul of the Eighth Amendment prohibition against cruel and
unusual punishment.”  See Hicks v. State, 15 S.W.3d 626, 632 (Tex. App.—Houston [14th
Dist.] 2000, pet. ref'd).

Under the
Eighth Amendment prohibition against cruel and usual punishment, a criminal
sentence must be proportionate to the crime for which the defendant has been
convicted.  Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006 (1983).
 The Supreme Court has set forth objective factors to be considered in
reviewing the proportionality of a sentence under the Eighth Amendment: (1) the
gravity of the offense and the harshness of the penalty; (2) the sentences
imposed on other criminals in the same jurisdiction; and (3) the sentences
imposed for commission of the same crime in other jurisdictions.  See id.,
463 U.S. at 290-91, 103 S.Ct. at 3011.

We first make
a threshold comparison of the offense against the severity of the sentence,
judging the gravity of the offense in light of the harm caused or threatened to
the victim or society and the culpability of the offender.  Culton v. State,
95 S.W.3d 401, 403 (Tex. App.—Houston [1 Dist.] 2002, pet ref’d).  A sentence is
grossly disproportionate to the crime only when this objective comparison
reveals the sentence to be extreme.  Harris v. State, 204 S.W.3d 19, 29
(Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).  If we determine that the
sentence is grossly disproportionate to the offense, we must then consider the
remaining factors of the Solem test and compare the sentence received to
sentences for similar crimes in this jurisdiction, and sentences for the same
crime in other jurisdictions.  Baldridge v. State, 77 S.W.3d 890, 893
(Tex. App.—Houston [14th Dist.] 2002, pet. denied).  

            Appellant
acknowledged that he was guilty of two separate offenses of theft of over
$200,000, each a first degree felony.  See Tex. Penal Code § 31.03(e)(7). 
The statutory range of punishment for a first degree felony offense is from
five to ninety-nine years or life in prison and up to a $10,000 fine.  Tex.
Penal Code § 12.32.  Thus, appellant’s sentences are well within the statutory
range.  

The record contains evidence that appellant stole
over $1 million from two different employers over a three-year period.  Specifically,
there was evidence that from January 2003 to June 2004, appellant stole
$742,854 from his former employer Lansdowne-Moody Company, a family owned
business selling tractors and construction equipment.  During that period, the
company experienced cash flow problems and for the first time considered
eliminating employee positions and layoffs.  Appellant prepared spread sheets
illustrating positions that could be eliminated and showing the savings to the
company.  Because of its financial losses, the company also was unable to carry
out a planned expansion and was unable to provide increased benefits to its
employees.  After the theft was discovered, the company spent $150,000 in
attorney’s fees in attempting to recoup losses.  The company also paid $50,000
to an accounting firm to correct audits and tax filings.  The thefts were
personally devastating to the founder of the company.  Lansdowne-Moody was able
to recover only part of its losses; it recovered $150,000 from appellant,
$100,000 in insurance proceeds, and $138,000 from a civil suit against an
accounting firm that had not identified inconsistencies in Lansdowne-Moody’s
records.  

After Lansdowne-Moody terminated appellant, he was
hired by John Daugherty Realtors.  Appellant did not disclose that he had been
employed by Lansdowne-Moody, or that he had been terminated for theft.  Appellant
was employed as controller from November 2006 to December 2007, and during that
time stole $750,000 in cash and forged company checks.  There was evidence that
John Daugherty Realtors incurred a total loss of $1.8 million, which also included
overdraft charges, late fees, attorney’s fees, and fees to an investigator and
a forensic accountant firm.  Its losses were only partially offset by recovery
of $500,000 in insurance proceeds.  

During the period of the thefts, appellant enjoyed a
lifestyle that greatly exceeded what his salary would provide.  Testimony
showed that he was paid $60,000 per year by Lansdowne-Moody and $100,000 per
year by John Daugherty Realtors.  Appellant had a large truck and recreational
vehicle, three custom motorcycles, and he purchased a swimming pool, decks and
gazebo for his residence.  Evidence was also introduced that thousands of
dollars were paid from appellant’s bank account to support appellant’s
lifestyle, including payments to an art broker, a boutique, and a luxury hotel.
 

Appellant also presented evidence at the punishment
hearing.  Appellant’s family members testified that he was a devoted family man
who treated his step-children well.  There was testimony that the children’s
grades had declined since appellant was incarcerated.  A family friend also
testified that appellant acted like a father to him and took him into his home
for two or three years, encouraging him to continue his education.

The record contains ample evidence showing the
seriousness of the thefts appellant committed and the harm done to his victims. 
Appellant’s former employers suffered huge losses and have been able to recover
only a portion of the money that was stolen.  Appellant purchased extravagant
luxuries while other employees faced layoffs.  We conclude that appellant’s
sentences are not disproportionate when compared to the gravity of the thefts
appellant committed.  See Ajisebutu v. State, 236 S.W.3d 309, 315 (Tex.
App.—Houston [1st Dist.] 2007, pet. ref’d) (holding that 60-year sentence for
money laundering approximately $172,000 was not a grossly disproportionate
punishment); Peto v. State, 51 S.W.3d 326, 329 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref’d) (holding that 16-year sentence for theft of over
$220,000 from a business was not grossly disproportionate).

Because the threshold showing that appellant’s
sentences were excessive in comparison to his crimes has not been demonstrated,
no further review is required.  Even if appellant had met the threshold burden,
however, he provided no evidence comparing his sentence with those imposed
against other defendants convicted of similar offenses in Texas and other
jurisdictions.  See Solem¸463 U.S. at 292; Ajisebutu, 236 S.W.3d
at 315 n. 5.

            In conclusion, we
overrule appellant’s sole issue.  The judgments of the trial court are
affirmed.

 

                                                                                    

                                                                        /s/        Leslie
Brock Yates                                                                                                                           

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges and Justices Yates and Mirabal.[2]

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]  Appellant cites to both
the Eighth Amendment to the United States Constitution and Article I, section
13 of the Texas constitution.  See U.S. Const. amend. VIII; Tex. Const.
art. I, § 13.  Appellant has not argued that the state constitution provides
broader protection against cruel and unusual punishment than the Eighth
Amendment.  Accordingly, we need not separately address appellant’s issue with
respect to the state constitution.  See Puga v. State, 916 S.W.2d 547,
550 (Tex. App.—San Antonio 1996, no pet.).  





[2] Senior Justice Margaret
Garner Mirabal sitting by assignment.