FILED IN
COURT OF CRIMINAL APPEALS

December 9, 2015

ABEL ACOSTA, CLERK

## NO. PD-0599-15

PD-0599-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/9/2015 11:21:18 AM
Accepted 12/9/2015 1:06:40 PM
ABEL ACOSTA
CLERK

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## THE STATE OF TEXAS,
### Respondent/Appellant

## v.

## MARK TWAIN SIMPSON,
### Petitioner/Appellee

*On Discretionary Review of a decision by the Court of Appeals
for the Fifth District of Texas at Dallas
in Cause Number 05-14-00618-CR
Appeal from Criminal District Court Number Four of Dallas County
in Cause Number F13-56596-K*

## STATE'S BRIEF

SUSAN HAWK
*CRIMINAL DISTRICT ATTORNEY*
DALLAS COUNTY, TEXAS

KAREN R. WISE
*ASSISTANT DISTRICT ATTORNEY*

*Counsel of Record:*
KIMBERLY J. DUNCAN
*ASSISTANT DISTRICT ATTORNEY*
STATE BAR NO. 24051190
FRANK CROWLEY COURTS BLDG.
133 N. RIVERFRONT BLVD., LB-19
DALLAS, TEXAS 75207-4399
(214) 653-3629/(214) 653-3643 *fax*
Kimberly.Duncan@dallascounty.org

*ATTORNEYS FOR THE STATE OF TEXAS*

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ...........................................................i

INDEX OF AUTHORITIES..........................................................................ii

STATEMENT OF THE CASE.........................................................................1

ISSUE PRESENTED..................................................................................2

STATEMENT OF FACTS ............................................................................2

SUMMARY OF ARGUMENT .......................................................................8

ARGUMENT ..........................................................................................8

    *Response: Appellee failed to produce evidence or point to evidence in the trial record to substantiate his claim of a grossly disproportionate sentence*...............8

        *A. Standard of Review* ..................................................................8

        *B. Applicable Law: Proportionality*..................................................10

        *C. Application and Analysis*............................................................12

PRAYER ...............................................................................................24

CERTIFICATE OF COMPLIANCE ...............................................................24

CERTIFICATE OF SERVICE ......................................................................25

## IDENTITY OF PARTIES AND COUNSEL

*Respondent/Appellant*:

The State of Texas

*Represented by*:

Susan Hawk,
    Criminal District Attorney
George Lewis,
    Assistant District Attorney (guilty plea and motion for new trial hearing)
Michael Casillas,
    Assistant District Attorney (in the Fifth Court of Appeals)
Kimberly J. Duncan,
    Assistant District Attorney (in the Texas Court of Criminal Appeals)
Dallas County District Attorney's Office
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399

*Petitioner/Appellee*:

Mark Twain Simpson

*Represented by*:

Bruce Anton
Brett Ordiway
Sorrels, Udashen & Anton
2311 Cedar Springs Road, Suite 250
Dallas, Texas 75201

*Trial court*:

The Honorable Dominique Collins,
Presiding Judge, Criminal District Court Number Four

# INDEX OF AUTHORITIES

**Cases**

*Acosta v. State*,
   160 S.W.3d 204 (Tex. App.—Fort Worth 2005, no pet.) ....................................19

*Ball v. State*,
   No. 05-11-01534-CR, 2012 Tex. App. LEXIS 9026 (Tex. App.—Dallas Oct. 31,
   2012, pet. ref'd) (not designated for publication) ................................................23

*Culton v. State*,
   95 S.W.3d 401 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)............... 11, 19

*Davis v. State*,
   119 S.W.3d 359 (Tex. App.—Waco 2003, pet. ref'd) ........................................18

*Drew v. State*,
   743 S.W.2d 207 (Tex. Crim. App. 1987) ............................................................18

*Enriquez v. State*,
   No. 05-12-01037-CR, 2014 Tex. App. LEXIS 2898 (Tex. App.—Dallas Mar. 13,
   2014, pet. ref'd) (mem. op., not designated for publication) ..............................23

*Ewing v. California*,
   538 U.S. 11 (2003) ........................................................................ 12, 18, 20, 21

*Ex parte Chavez*,
   213 S.W.3d 320 (Tex. Crim. App. 2006) ...................................................... 12, 14

*Graham v. Florida*,
   560 U.S. 48 (2010) ....................................................................... 10, 11, 19, 23

*Guzman v. State*,
   85 S.W.3d 242 (Tex. Crim. App. 2002) ........................................................ 12, 18

*Harmelin v. Michigan*,
   501 U.S. 957 (1991) .............................................................................................11

*Harris v. State*,
   656 S.W.2d 481 (Tex. Crim. App. 1983)...................................................... 12, 14

*Hutto v. Davis*,
   454 U.S. 370 (1982) .............................................................................................11

*In re Simpson,* No. PD-0599-15, 2015 Tex. Crim. App. LEXIS 1000 (Tex. Crim.
   App. Sept. 23, 2015) (not designated for publication)...........................................2

*Lackey v. State*,
  881 S.W.2d 418 (Tex. App.—Dallas 1994, pet. ref'd) .......................................23

*McGruder v. Puckett*,
  954 F.2d 313 (5th Cir. 1992) ................................................................. 11, 22

*Mena v. State*,
  504 S.W.2d 410 (Tex. Crim. App. 1974) ...........................................................18

*Sample v. State,*
  405 S.W.3d 295 (Tex. App.—Fort Worth 2013, pet. ref'd) ...............................18

*State v. Guzman*,
  959 S.W.2d 631 (Tex. Crim. App. 1998) ..........................................................12

*State v. Herndon*,
  215 S.W.3d 901 (Tex. Crim. App. 2007) .................................. 6, 9, 10, 13, 14, 21

*State v. Simpson*,
  No. 05-14-00618-CR, 2015 Tex. App. LEXIS 3929 (Tex. App.—Dallas Apr. 20,
  2015, pet. granted) (mem. op., not designated for publication) ...... 2, 7, 10, 13, 23

*State v. Stewart*,
  282 S.W.3d 729 (Tex. App.—Austin 2009, no pet.).................................... 10, 13

*State v. Thomas*,
  428 S.W.3d 99 (Tex. Crim. App. 2014) ...................................................... 8, 9, 21

*Thomas v. State*,
  916 S.W.2d 578 (Tex. App.—San Antonio 1996, no pet.) .................................19

*Williams v. State*,
  375 S.W.2d 449 (Tex. Crim. App. 1964) ..........................................................10

**Statutes**

Tex. Penal Code Ann. § 12.42 (West Supp. 2014).................................................14

Tex. Penal Code Ann. § 29.02 (West 2011) .........................................................14

**Rule**

Tex. R. App. P. 21.3.................................................................................................8

**Constitutional Provision**

U.S. Const. amend. VIII..........................................................................................10

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

The State of Texas respectfully submits this brief in response to the brief on discretionary review filed by Petitioner/Appellee, Mark Twain Simpson.

## STATEMENT OF THE CASE

The State indicted Appellee for the second-degree felony offense of robbery; the indictment included an enhancement paragraph, alleging a prior felony conviction for aggravated robbery. (CR: 18). On March 13, 2014, Appellee entered an open plea of guilty to the indictment in the trial court. (RR 2: 4-5). The trial court accepted Appellee's plea and reset the case for sentencing following a presentence investigation. (RR 2: 5). The proceedings resumed on April 3, 2014; the trial court heard testimony from Appellee's mother and Appellee. (RR 3: 4-20). After hearing arguments from the parties, the trial court found Appellee guilty and sentenced him to twenty-five years' confinement. (CR: 60-61; RR 3: 20).

Appellee filed a motion for new trial, alleging that his twenty-five year sentence constituted a grossly disproportionate punishment. (CR: 64-67; RR 4: 4-7). The trial court conducted a hearing on May 1, 2014, and after hearing arguments from the parties and testimony from Appellee's mother and sister, granted Appellee a new trial as to punishment. (CR: 68; RR 4: 4-26). The trial court stated that Appellee would not be allowed to withdraw his previously-entered plea. (RR 4: 26).

1

The State appealed. (CR: 72-73). On April 20, 2015, the Court of Appeals for the Fifth District of Texas at Dallas issued an unpublished opinion vacating the trial court's order granting a new trial and reinstating the trial court's original judgment. *State v. Simpson*, No. 05-14-00618-CR, 2015 Tex. App. LEXIS 3929 (Tex. App.—Dallas Apr. 20, 2015, pet. granted) (mem. op., not designated for publication). This Court granted Appellee's petition for discretionary review to determine whether he produced evidence or pointed to evidence in the trial court record that substantiated his legal claim in his motion for new trial. *See In re Simpson,* No. PD-0599-15, 2015 Tex. Crim. App. LEXIS 1000 (Tex. Crim. App. Sept. 23, 2015) (not designated for publication).

## ISSUE PRESENTED

Appellee did not produce evidence or point to evidence in the trial record

to substantiate his legal claim of a grossly disproportionate sentence.

## STATEMENT OF FACTS

After accepting Appellee's plea of guilty to an indictment for robbery on March 13, 2014, the trial court reset the case for sentencing. (RR 2: 5). The proceedings resumed on April 3, 2014. At that time, the prosecutor indicated that the State did not have any additional evidence. (RR 3: 4). Appellee then presented the testimony of his mother, Frankie Simpson. (RR 3: 4-10).

2

She testified that Appellee was arrested two days before he turned eighteen for numerous aggravated robberies and that he spent sixteen or seventeen years in the penitentiary for the offenses. (RR 3: 5). She said Appellee had been out of the penitentiary "about ten years," and he had "been working off and on getting good jobs." (RR 3: 5). She explained that Appellee lived with herself and her husband, Curtis Simpson, and was primarily responsible for taking care of them. (RR 3: 6). Frankie Simpson informed the court that her husband was diabetic and "not in the best of health," and that her doctor "found a spot" on her lung. (RR 3: 6). She explained that Appellee's sister, who was present in court, also helped, but was not responsible for her care. (RR 3: 6). She also testified that she had talked to Appellee about the instant case and said her son admitted "hocking stolen property." (RR 3: 7). She asked the trial court to give Appellee another chance on probation. (RR 3: 7). On cross-examination, the witness acknowledged that Appellee committed sixteen aggravated robberies over the course of about a month in the 1980s and was convicted for the offenses. (RR 3: 5, 8, 15-16). Appellee lived with his parents and was in high school at the time he committed the aggravated robberies. (RR 3: 8). Frankie Simpson testified most of Appellee's work had been in construction. (RR 3: 9).

Appellee testified after his mother. (RR 3: 10-19). He explained that he acted in concert with two accomplices in the instant offense. (RR 3: 10-14). Appellee testified

3

that he had offered to identify the unapprehended accomplice, Joseph Aguilar, who he knew through work on a job site. (RR 3: 11). He said he did not know the other man but knew he had entered a plea to the trial court and received probation. (RR 3: 11). Even though Appellee stated he did not commit any assaultive conduct toward the robbery victim and he stayed in the car while his accomplices committed the robbery, Appellee admitted he was present when his accomplices committed the robbery, admitted he pawned the property he knew his accomplices stole from the victim, and admitted he received a portion of the money from pawning the property his accomplices secured by committing the robbery. (RR 3: 10-14, 18-19).

On cross-examination, Appellee again stated that he did not know the man who received probation for his role in the robbery "at all." (RR 3: 15). When asked if he was aware that the man did not have any criminal history, Appellee responded, "Not really." (RR 3: 15). He admitted that he, on the other hand, had a criminal history. (RR 3: 15). Appellee acknowledged that he received a twenty-five year sentence in 1984 in regard to his prior convictions for aggravated robbery. (RR 3: 16). He also received a ten year sentence in 1984 for burglary of a motor vehicle. (RR 3: 16). Appellee testified that he was initially released from prison on parole in 1999, but was reincarcerated for violating his parole and was eventually released again in 2005 or 2006. (RR 3: 16). He admitted that, following his release, he was arrested for theft in

2012. (RR 3: 17). While he tried to explain that his arrest had been based on a mistake, he did not dispute that he had been arrested for the theft at a Home Depot store. (RR 3: 17). Similarly, in regard to a pending forgery charge, Appellee claimed he had been paid for work he had done with checks that "bounced" and that he was charged with forgery based on his attempt to negotiate the checks that "bounced." (RR 3: 17).

At the conclusion of the testimony, Appellee's counsel argued that penitentiary time was not merited for Appellee's role in the offense and asked the trial court to consider deferred probation, arguing Appellee was "primarily [there] because of the criminal history he acquired when he was 16-years-old." (RR 3: 19). The State conceded the instant offense "was not the most agresious [sic] case in the world," but said Appellee's criminal history "speaks for itself" and showed Appellee had not learned his lesson from his prior time in the penitentiary. (RR 3: 20). The State asked for a prison sentence. (RR 3: 20). The trial court found Appellee guilty and assessed his sentence at twenty-five years' confinement. (RR 3: 20).

Thereafter, Appellee filed a motion for new trial, alleging his sentence constituted a grossly disproportionate punishment. (CR: 64-67). The trial court conducted a hearing on the motion on May 1, 2014. (RR 4: 4-26). At the beginning of the hearing, the parties and trial court discussed the respective roles of Appellee and his accomplices in the robbery as well as the lack of a criminal history for "Mr. Zelaya," the accomplice who

received probation. (RR 4: 4). The State argued that no new trial should be granted under *State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007). (RR 4: 5-7). In substance, the State argued that the granting of a new trial was not permitted under *Herndon* because the previous proceedings had been conducted in accordance with the law and that Appellee's twenty-five year sentence was not a cruel and unusual punishment because it was "actually on the lower end" of the available first-degree felony punishment range. (RR 4: 5-7). The State also reminded the trial court that, while a codefendant received probation, the man had no criminal history, while Appellee previously served a twenty-five year sentence for committing sixteen aggravated robberies. (RR 4: 6-7).

Appellee presented the testimony of his sister, Alecia Simpson, and his mother. (RR 4: 7-21). Appellee's sister acknowledged that she was present but did not testify during the punishment phase. (RR 4: 8). She testified that Appellee committed the offenses in the 1980s with a man who was "killed by bounty hunters." (RR 4: 8-9). She testified that she did not think her brother was prepared to rejoin the community in 2005, stating he did not have any job skills. (RR 4: 10). She explained how the family encouraged Appellee to "pick up a trade or go to school or something," and said he received certifications in air-conditioning and refrigeration. (RR 4: 11). She said Appellee needed drug treatment and training. (RR 4: 13).

6

Frankie Simpson testified that, of her five children, Appellee was the only one who had ever been in serious legal trouble. (RR 4: 17). She again explained that Appellee lived with his parents and helped them since both she and her husband had major health problems. (RR 4: 18). She said they needed him "more than anything." (RR 4: 19). She said Appellee was a good worker and that they would keep him busy and get him some help. (RR 4: 19). She also told the court that Appellee's employer from before his arrest would like to have him back on the job. (RR 4: 20-21).

After Appellee's counsel argued the evidence showed that he needed assistance with a drug problem, the State argued that no new trial should be granted because there had been no showing that the previous proceedings had not been conducted in accordance with the law. (RR 4: 24). The trial court verbally and in a written order granted Appellee a new trial. (CR: 68; RR 4: 26). The trial court stated Appellee was being granted a new trial only as to punishment and would not be allowed to withdraw his plea; she also noted that, "if punishment were up to me, I would be inclined to put him on a long probation and if he messed that up then I would send him away for the rest of his life." (CR: 68; RR 4: 26). The State appealed. (CR: 72-73). On April 20, 2015, the Dallas Court of Appeals issued an unpublished opinion vacating the trial court's order granting a new trial and reinstating the trial court's original judgment. *Simpson*, 2015 Tex. App. LEXIS 3929, at *1, 9-10.

## SUMMARY OF ARGUMENT

The court of appeals correctly applied the analysis under *Herndon* and concluded that the trial court abused its discretion in granting Appellee's motion for new trial. Appellee did not produce evidence or point to evidence in the trial record to substantiate his claim of a grossly disproportionate sentence.

## ARGUMENT

***Response: Appellee failed to produce evidence or point to evidence in the trial record to substantiate his claim of a grossly disproportionate sentence.***

Contrary to Appellee's assertion, the court of appeals did not improperly require him to prove reversible error as a matter of law; rather, the court properly held him to his burden of demonstrating that his first trial was seriously flawed. The judgment of the court of appeals should be affirmed because Appellee failed to produce evidence or point to evidence in the trial court to substantiate his claim of a grossly disproportionate sentence.

### A. Standard of Review

A trial court may grant a new trial on any of the grounds specified in Texas Rule of Appellate Procedure 21.3 or "in the interest of justice." *See* Tex. R. App. P. 21.3; *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). "Justice" means "in accordance with the law" and upon a showing that substantial rights were affected. *See Thomas*, 428 S.W.3d at 105.

An appellate court reviews a trial court's order granting a new trial for an abuse of discretion. *Id.* at 103. The reviewing court views the evidence in the light most favorable to the trial court's ruling, defers to the court's credibility determinations, and presumes all reasonable fact findings in support of the ruling have been made. *Id.* at 104. A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *See id.* at 103. In the context of a motion for new trial, a trial court abuses its discretion if it grants the new trial for a non-legal or legally invalid reason or based on "mere sympathy, an inarticulate hunch, or simply because he believes that the defendant is innocent or 'received a raw deal.'" *Id.* at 103-04 (quoting *State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007)).

Conversely, a trial court does not abuse its discretion in granting a motion for new trial where the defendant (1) articulated a valid legal claim in his new trial motion; (2) produced evidence or pointed to evidence in the trial record substantiating his legal claim; and (3) showed prejudice to his substantial rights under the standards in Texas Rule of Appellate Procedure 44.2. *Herndon*, 215 S.W.3d at 909. The trial court may exercise its discretion in granting a new trial without a showing of reversible error as a matter of law but only if the defendant has demonstrated his first trial was "seriously flawed and the flaw adversely affected his substantial right to a fair trial." *Id.*

9

In making a decision at a motion for new trial hearing, the trial judge may consider the evidence and what transpired at the trial, any affidavits involved, and the testimony adduced at the hearing on the motion. *See Williams v. State*, 375 S.W.2d 449, 451 (Tex. Crim. App. 1964). The trial court should balance the substantive content of the defendant's claim or claims "against both the interests of the public in finality and the harmless-error standards set out in Rule 44.2 [of the Texas Rules of Appellate Procedure]." *Herndon*, 215 S.W.3d at 908. A trial court should not grant a new trial unless the defendant's substantial rights were affected. *Id*. "Otherwise, the phrase 'interest of justice' would have no substantive legal content, but constitute a mere platitude covering a multitude of unreviewable rulings." *Id*.

## B. Applicable Law: Proportionality

As the court of appeals properly recognized, an allegation of disproportionate punishment is a valid legal claim. *See Simpson*, 2015 Tex. App. LEXIS 3929, at \*6 (citing *State v. Stewart*, 282 S.W.3d 729, 738 (Tex. App.—Austin 2009, no pet.)). The concept of proportionality is embodied in the Constitution of the United States of America, which prohibits cruel and unusual punishment and requires that punishment be graduated and proportioned to the offense. *See* U.S. Const. amend. VIII; *Graham v. Florida*, 560 U.S. 48, 59 (2010).

Proportionality is, however, a narrow principle that "'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Graham*, 560 U.S. at 59-60 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-1001 (1991) (Kennedy, J., concurring in part and concurring in judgment)). As the United States Supreme Court has mandated, "successful challenges to the proportionality of particular sentences should be *exceedingly rare*." *Hutto v. Davis*, 454 U.S. 370, 374 (1982) (emphasis added).

In determining whether a sentence is grossly disproportionate to the crime committed, the court must judge the punishment in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *See Graham*, 560 U.S. at 60; *Culton v. State*, 95 S.W.3d 401, 403 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). If the appellate court determines that the sentence is not grossly disproportionate to the crime, no further analysis need be conducted. *See McGruder v. Puckett*, 954 F.2d 313, 315 (5th Cir. 1992). In the "rare" case when this comparison leads to an inference of gross disproportionality, the sentence is then judged in light of sentences imposed upon other criminals in the same jurisdiction and sentences imposed for the commission of the same crime in other jurisdictions. *Graham*, 560 U.S. at 60.

Generally, punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual offender statute, is not excessive, cruel, or unusual. *See Ex parte Chavez*, 213 S.W.3d 320, 323-24 (Tex. Crim. App. 2006); *Harris v. State*, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983). The United States Supreme Court has expressly stated that a gross disproportionality assessment must consider not only an offender's "current felony, but also his long history of felony recidivism." *Ewing v. California*, 538 U.S. 11, 29 (2003). Moreover, all Texas courts conducting gross disproportionality assessments under the Eighth Amendment and the principles enunciated by the United States Supreme Court applicable to such assessments "are required to follow the decisions and reasoning of the United States Supreme Court on [such] federal constitutional issues." *Guzman v. State*, 85 S.W.3d 242, 249 n.24 (Tex. Crim. App. 2002) (*citing State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998)).

### C. Application and Analysis

Appellee asserts that he produced evidence or pointed to evidence in the trial record to substantiate the legal claim in his motion for new trial and claims the Dallas Court of Appeals improperly substituted its own analysis of the issue for that of the trial court. Contrary to his claim, the appellate court properly reviewed the granting of the motion and concluded the trial court abused its discretion in this case. Specifically,

the original sentence assessed by the trial court was not grossly disproportionate to the offense committed and the first punishment trial was not so seriously flawed as to affect Appellee's substantial rights and justify granting the motion for new trial.

Appellee's motion for new trial included only a claim of gross disproportionality of his sentence; the Dallas Court of Appeals recognized Appellee's claim as a valid legal claim, but this did not end the court's inquiry. *See Simpson*, 2015 Tex. App. LEXIS 3929, at *6 (citing *Stewart*, 282 S.W.3d at 738). Rather, the court properly went on to examine whether Appellee produced evidence or pointed to evidence to substantiate the claim. In doing so, the court did not substitute its judgment for that of the trial court or hold Appellee to the burden of "proving" his claim as he alleges to this Court. Appellee needed to substantiate his claim that his twenty-five year sentence was grossly disproportionate to the offense. Not only was there no reversible error present in the underlying proceedings,[1] but Appellee failed to demonstrate that his first trial was "seriously flawed and the flaw adversely affected his substantial right to a fair trial." *See Herndon*, 215 S.W.3d at 909. The evidence simply did not support his claim of a grossly disproportionate sentence.

---

[1] As noted in footnote three of the Dallas Court of Appeals' opinion, Appellee "agree[d] that aside from his disproportionate sentence, the brief proceedings (the hearings on his guilty plea and sentencing) were otherwise conducted in accordance with the law." *Simpson*, 2015 Tex. App. LEXIS 3929, at *8.

While Appellee's instant robbery offense was a second-degree felony, he faced the first-degree felony punishment range of confinement for five to ninety-nine years or life because he plead true to an enhancement paragraph, alleging that he had a prior felony conviction for aggravated robbery. (CR: 18, 55-59; RR 2: 4-5; RR 3: 4). *See* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2014) (explaining enhancement of punishment range for a second-degree felony); Tex. Penal Code Ann. § 29.02(b) (West 2011) (stating robbery is a second-degree felony). Considering that Appellee faced a minimum sentence of five years and that ninety-nine years or life confinement were the maximum sentences Appellee could receive, his twenty-five year sentence was within the lower end of the applicable range of punishment. *See Chavez*, 213 S.W.3d at 323-24 (explaining that, generally, punishment assessed within the statutory limits, including punishment enhanced pursuant to a habitual offender statute, is not excessive, cruel, or unusual); *Harris*, 656 S.W.2d at 486 (same).

Additionally, none of the evidence before the trial court—at the original punishment hearing or the new trial hearing—substantiated Appellee's claim of a grossly disproportionate sentence. *See Herndon*, 215 S.W.3d at 909. Appellee and his mother testified at the punishment phase. (RR 3: 4-19). Frankie Simpson testified about her son's arrest two days before he turned eighteen for numerous aggravated robberies; she said he spent sixteen or seventeen years in the penitentiary for the

14

offenses, had been out of the penitentiary "about ten years," and had "been working off and on getting good jobs." (RR 3: 5). She explained that Appellee lived with and cared for his parents. (RR 3: 6). She also testified that she had talked to Appellee about the instant case and said Appellee admitted "hocking stolen property." (RR 3: 7). She asked the trial court to give Appellee another chance on probation. (RR 3: 7).

Appellee testified after his mother. (RR 3: 10-19). He explained that he acted in concert with two accomplices in the instant offense. (RR 3: 10-14). Appellee testified that he had offered to identify the unapprehended accomplice, Joseph Aguilar, who he knew through work on a job site. (RR 3: 11). He said he did not know the other man but knew he had entered a plea to the trial court and received a probated sentence. (RR 3: 11). Even though Appellee stated he did not commit any assaultive conduct toward the robbery victim and he stayed in the car while his accomplices committed the robbery, Appellee admitted he was present when his accomplices committed the robbery, admitted he pawned the property he knew his accomplices stole from the victim, and admitted he received a portion of the money from pawning the property his accomplices secured by committing the robbery. (RR 3: 10-14, 18-19).

On cross-examination, Appellee testified about his prior criminal history. (RR 3: 15-17). He acknowledged that he received a twenty-five year sentence in 1984 in regard to his sixteen prior convictions for aggravated robbery. (RR 3: 16). He also

15

received a ten year sentence in 1984 for burglary of a motor vehicle. (RR 3: 16). Appellee testified that he was initially released from prison on parole in 1999, but was reincarcerated for violating his parole and was eventually released in 2005 or 2006. (RR 3: 16). He admitted that, following his release, he had also been arrested for theft and forgery. (RR 3: 17).

Appellee's mother and sister, Alecia Simpson, testified at the new trial hearing. (RR 4: 7-22). Thus, the only witness who testified at the hearing on the motion for new trial who had not testified at the punishment phase was Appellee's sister, who admitted that she had been present during the punishment phase but had not been called to testify. (RR 3: 4-19; RR 4: 7-9). Appellee did not claim in his motion for new trial—and nothing in the record shows—that he was prevented from calling his sister as a witness during the punishment phase. Appellee's sister testified that Appellee committed the offenses in the 1980s with a man who was "killed by bounty hunters." (RR 4: 8-9). She testified that she did not think her brother was prepared to rejoin the community in 2005, stating he did not have any job skills. (RR 4: 10). She explained how the family encouraged Appellee to "pick up a trade or go to school or something," and said he received certifications in air-conditioning and refrigeration. (RR 4: 11). She said Appellee needed drug treatment and training. (RR 4: 13).

16

Frankie Simpson testified that, of her five children, Appellee was the only one who had ever been in serious legal trouble. (RR 4: 17). She explained that Appellee lived with his parents and helped them since both she and her husband had major health problems. (RR 4: 18). She said they needed him "more than anything." (RR 4: 19). She said Appellee was a good worker and that, to help him, they would keep him busy and get him some help. (RR 4: 19). She told the court that Appellee's employer from before his arrest would like to have him back on the job. (RR 4: 20-21).

A review of Appellee's motion for new trial and arguments reveals that he repeatedly relied on the facts of the instant offense and how they supposedly showed the limited role he played in the commission of the offense; he also attempted to minimize his criminal history. (CR: 64-67; RR 4: 22-24). In support of his arguments at the new trial hearing, Appellee contended that he needed assistance with his drug addiction, that he was no longer the person he had been when he had committed the earlier offenses, and that he would benefit from being strictly supervised and from receiving the support of his family members. (RR 4: 22-24).

Appellee's attempt to minimize his criminal history fails to support the conclusion that his twenty-five sentence was grossly disproportionate because the United States Supreme Court has mandated that assessment of gross disproportionality must take into account any defendant's recidivist criminal history, and Texas courts

must follow the aforementioned dictates of the United States Supreme Court on this point. *See Ewing*, 538 U.S. at 29; *Guzman*, 85 S.W.3d at 249 n.24; *see also Sample v. State,* 405 S.W.3d 295, 304-05 (Tex. App.—Fort Worth 2013, pet. ref'd) (recognizing that a repeat offender's sentence is not based "merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes"); *Davis v. State*, 119 S.W.3d 359, 363 (Tex. App.—Waco 2003, pet. ref'd) (explaining that, in considering whether a sentence is grossly disproportionate, the reviewing court should consider "not only the present offense but also his criminal history").

Additionally, Texas law has long recognized Appellee's instant robbery and all of his prior aggravated robberies were *per se* crimes of violence or threatened violence. *See Drew v. State*, 743 S.W.2d 207, 211 (Tex. Crim. App. 1987); *Mena v. State*, 504 S.W.2d 410, 414 (Tex. Crim. App. 1974). Accordingly, the serious nature of the instant robbery offense—as well as all of Appellee's sixteen prior aggravated robberies—not only must be considered as part of the context of any proportionality review, but also clearly weighs against the trial court's decision to grant Appellee's motion for new trial on gross disproportionality grounds. *See Ewing*, 538 U.S. at 28.

Furthermore, Appellee's reliance on his alleged drug addiction also fails to provide any substantive support for the conclusion that his twenty-five year sentence was grossly disproportionate. In properly conducting the assessment of the sentence against the gravity of the offense, not only must the culpability of the offender be considered, but the harm caused or threatened to the victim or the larger society in general must also be taken into account. *See Graham*, 560 U.S. at 60; *Culton*, 95 S.W.3d at 403. Texas jurisprudence has long recognized that users of illegal drugs often resort to committing other offenses against innocent bystanders and/or third parties as a means of facilitating their ability to obtain the illegal drugs the drug users wish to use. *See, e.g., Acosta v. State*, 160 S.W.3d 204, 212 (Tex. App.—Fort Worth 2005, no pet.); *Thomas v. State*, 916 S.W.2d 578, 583 (Tex. App.—San Antonio 1996, no pet.).

In light of how Texas jurisprudence has recognized the damage to society at large that results from the associated crimes the users of illegal drugs often commit, evidence of Appellee's purported drug problems provided no substantive support for the conclusion that his twenty-five year sentence constituted a grossly disproportionate punishment. His drug problems actually supported the conclusion that the sentence was in no objective way disproportionate, much less grossly so. *See, e.g., Acosta*, 160 S.W.3d at 212; *Thomas*, 916 S.W.2d at 583.

19

Finally, although Appellee claimed his prior felony convictions were "far too remote" to support assessment of a twenty-five year sentence, the record was undisputed regarding that, as a teenager in a 1980s, Appellee committed and was convicted of sixteen aggravated robberies and felony burglary of a motor vehicle.[2] (RR 3: 5, 8, 15-16). Appellee received twenty-five year sentences for the aggravated robberies and a ten year sentence for his burglary of a motor vehicle, which he served concurrently. (RR 3: 16). Appellee was originally released on parole in 1999, only to be reincarcerated for violating his parole until he was released again in 2005. (RR 3: 16; RR 4: 10). As noted by the court of appeals, Appellee was also arrested for theft and forgery within the same year and shortly before Appellee's arrest for robbery.

Appellee's admitted commission of another felony offense after having been convicted of seventeen other felony offenses—all but one which of constituted a crime of violence or threatened violence—and serving twenty-one years in prison supports the conclusion that his twenty-five year sentence in no way constituted a grossly disproportionate punishment. *See Ewing*, 538 U.S. at 30 (concluding twenty-five years to life sentence for felony grand theft under California's three strikes law not grossly disproportionate).

---

[2] In his punishment hearing testimony, Appellee did not dispute that he had committed sixteen aggravated robberies as testified to by his mother. (RR 3: 8, 16). At the motion for new trial hearing, however, Appellee's counsel referred to "14 armed robberies" in questioning Appellee's sister, and the prosecutor later made reference to "14 aggravated robbery convictions." (RR 4: 8, 25).

Even viewing the evidence in the light most favorable to the trial court' ruling, deferring to any credibility determinations made by the trial court, and presuming all reasonable fact findings in support of the trial court's ruling on the motion, the court of appeals correctly determined that the trial court abused its discretion in granting the motion for new trial. *See Thomas*, 428 S.W.3d at 103-04. The trial court's action was precisely what this Court has explained as an abuse of discretion. That is, the trial court, who presided over both the original punishment trial and the motion for new trial hearing, appears to have granted the new trial based on "mere sympathy, an inarticulate hunch, or simply because [s]he believes that the defendant is innocent or 'received a raw deal.'" *Id*. at 103-04 (quoting *Herndon*, 215 S.W.3d at 907).

The trial court abused its discretion by granting Appellee's motion for new trial on gross disproportionality grounds because nothing before the trial court supported the conclusion that the original twenty-five year sentence was so extreme that it was grossly disproportionate. Rather, it appears the trial court acquiesced in Appellee's request that she "re-asses the sentence its given." (RR 4: 24). Based on the undisputed nature of Appellee's extensive criminal history of serious, violent felony offenses, his case "is not the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *See Ewing*, 538 U.S. at 30 (citations and internal quotations omitted).

Appellee also claimed his sentence was disproportionate in light of the types of sentences assessed on the codefendants in this case and defendants in other cases, asserting that one codefendant remained at large and the other received probation as well as that "many defendants are not even sentenced to prison for the offense of robbery, but instead receive probation or deferred probation." (CR: 65-66; RR 3: 11, 15; RR 4: 4). At the punishment hearing, Appellee testified that he had heard that "the other person that went in the house and did the assault" received a probated sentence, and the parties and trial court revisited the issue at the beginning of the new trial hearing, noting again that the codefendant, who "had no history," received probation. (RR 3: 11, 15; RR 4: 4). Appellee points to this as "evidence" substantiating his claim in his brief to this Court. Appellee's Brief at 15-16.

This was not, however, an appropriate consideration in the initial disproportionality analysis, which as explained by the Dallas Court of Appeals and above, did not lead to an inference that the sentence was disproportionate to the crime. Importantly, the utter lack of any disproportionality negated the necessity of conducting the remainder of the gross disproportionality analysis, which is when consideration of other defendants' sentences becomes relevant. *See McGruder*, 954 F.2d at 315 (explaining that, if the appellate court determines that the sentence is not grossly disproportionate to the crime, no further analysis need be conducted); *see also*

22

*Graham*, 560 U.S. at 60 (discussing consideration in the "rare" case when there is an inference of gross disproportionality of the sentence is in light of sentences imposed upon other criminals in the same jurisdiction and sentences imposed for the commission of the same crime in other jurisdictions).

As such, the court of appeals correctly determined that the trial court abused its discretion in granting the motion for new trial and did not consider the sentences imposed on others. *See Simpson*, 2015 Tex. App. LEXIS 3929, at *9-10; *see also Lackey v. State*, 881 S.W.2d 418, 421 (Tex. App.—Dallas 1994, pet. ref'd) (declining to address the sentences for similar crimes in the same jurisdiction and the sentences for the same crime in other jurisdictions after finding the appellant's sentence was not grossly disproportionate to her crime).[3]

---

[3] In any event, had the Dallas Court reviewed its own jurisprudence, such a review only provides more support for the conclusion that Appellee's twenty-five year sentence was not a grossly disproportionate punishment. Although Appellee's codefendant who had no criminal history was placed on probation, his sentence alone would not support a claim of a grossly disproportionate sentence. Rather, the review shows that similarly situated defendants often receive longer sentences than Appellee's twenty-five year sentence for the crime of robbery. *See, e.g., Enriquez v. State*, No. 05-12-01037-CR, 2014 Tex. App. LEXIS 2898, at *1-5 (Tex. App.—Dallas Mar. 13, 2014, pet. ref'd) (mem. op., not designated for publication) (involving defendant who—like Appellee—was convicted of robbery and had a previous conviction for aggravated robbery as well as other conduct that was admitted as punishment evidence and, in that case, Enriquez received from the trial court a sentence of imprisonment for a period of forty years); *Ball v. State*, No. 05-11-01534-CR, 2012 Tex. App. LEXIS 9026, at *1-2 (Tex. App.—Dallas Oct. 31, 2012, pet. ref'd) (not designated for publication) (involving a jury-assessed sentence of ninety years for defendant who had been convicted of robbery and had a previous felony conviction).

23

In conclusion, the court of appeals properly reviewed the trial court's decision to grant Appellee's motion for new trial. Because the trial court abused its discretion in granting the motion, the judgment of the court of appeals should be affirmed.

## PRAYER

The State prays this Honorable Court will affirm the decision of the Court of Appeals for the Fifth District of Texas at Dallas in this case.

Respectfully submitted,

SUSAN HAWK
Criminal District Attorney
Dallas County, Texas

KIMBERLY J. DUNCAN
Assistant Criminal District Attorney
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB19
Dallas, Texas  75207-4399
(214) 653-3629
(214) 653-3643 (FAX)

## CERTIFICATE OF COMPLIANCE

I hereby certify that of the foregoing brief, inclusive of all contents, is 6,373 words in length, according to Microsoft Word, which was used to prepare the brief, and that the foregoing brief complies with the word-count limit and typeface conventions required by the Texas Rules of Appellate Procedure.

KIMBERLY J. DUNCAN
Assistant District Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Brief has been served on the Honorable Bruce Anton and the Honorable Brett Ordiway, Attorneys for Appellee, and the State Prosecuting Attorney via electronic service on December 9, 2015.

KIMBERLY J. DUNCAN
Assistant District Attorney